FILED

2018 Jun-11 PM 05:18
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **BENJAMIN MERCER,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **v.** | ) | **Case Number** |
| | ) | **2:16-CV-1204 RDP** |
| **ALABAMA DEPARTMENT OF** | ) | |
| **TRANSPORTATION,** | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### Table of Contents

A. Response to ALDOT's Undisputed Facts …………………………2

B. Plaintiff's Statement of Additional Facts…………………………6

    1. Articulated Reason for Discharge………………………………7

    2. Alleged Falsification of State Inspection Documents…………..8

    3. Alleged Failure to Calibrate and Lack of Hand Tools…………13

    4. Subordinate Employees' Use of Plaintiff's Log-in Name………14

    5. ALDOT's Disciplinary Actions for Falsification of Records….. 14

    6. The Racial Action of Brian Davis………………………………16

    7. Failure to Confer with Plaintiff's Direct Supervisor……………17

8.   Comparator Shannon Golden……………………………………18

9.   Insubordination/Endangerment of Life or Property……………..22

10. EEOC Finding of Reasonable Cause…………………………22

11. Retaliation……………………………………………………22

C.  Argument……………………………………………………23

D.  Conclusion…………………………………………………..25

E.  Certificate of Service………………………………………..26

Comes now the Plaintiff, and in opposition to Defendant Alabama Department of Transportation ("ALDOT")'s Motion for Summary Judgment (ECF Doc. 68), maintains that the existence of genuinely disputed material facts preclude the granting of Defendant's motion.

## A. ALDOT'S UNDISPUTED FACTS

6. ….

**Mercer was not taught anything differently by Perine than what Hightower had trained him.** (Ex. 1—Mercer Dep. 92:4-7).

Response:   **DISPUTED.** (PX 2, Mercer Depo., p. 92:13-15)

15.    ….

**Waldrop and Golden uncovered numerous deficiencies at the plant which revealed a lack of oversight from Mercer and the Division.** (Ex. 67—Waldrop Aff. ¶ 5).

Response:   **DISPUTED.**  (PX 1, Mercer Affidavit, ¶ 1.)

18**.**   **Because of the deficiencies found at the USA Ready Mix, Inc. concrete plant in Bessemer, Alabama, Waldrop and Golden performed inspections at all the concrete plants within the Third Division that had been actively supplying concrete to ALDOT.**   (Ex. 68—Golden Aff. ¶ 10; Ex. 67—Waldrop Aff. ¶ 5).

Response:   **DISPUTED.** (PX 1, Mercer Affidavit, ¶ 2.)

22.   **The data revealed that Mercer completed BMT-95 forms for inspection dates where his vehicle stayed an insufficient amount of time to complete an inspection and dates where his assigned vehicles never went to the concrete plant**. (Ex.65—Jemison Aff. ¶ ¶ 8,9, Attachment A).

Response:   **DISPUTED.** (Third Amended Complaint, pp. 6-7, ¶¶ 26-

35, ECF Doc. 32, pp. 6-7, ¶¶ 26-35; ECF Doc. 69, p. 18 ["ALDOT admits all the

facts alleged in the third amended complaint."] )

23.   **Efficient and properly performed inspections take at least 30 to 45** minutes to complete. (Ex. 65—Jemison Aff. ¶ 9).

Response:   **DISPUTED.** (Exh. 1, Mercer Depo., p. 144:4-10.)

25.   **BMT-95 forms are field and maintained at the division by inspectors exclusively since January 25, 2010.**

Response:   **DENIED.**   (Exh. 35, p. 2 [reflecting dispersal to the

Concrete Plant, Concrete Engineer, and Division Material Engineer]; PX 2, Perine

Depo. p. 117: 3-16,)

**Mercer and Perine were expressly made aware of this procedure.**
(Ex. 68—Golden Aff. ¶ 8, Attachment B).

Response:   **DISPUTED.** (Exh. 35.)

31.   **While working in the Third Division, Golden observed Mercer testing**

**cylinders and found that Mercer lacked knowledge regarding ALDOT specifications and procedures pertaining to concrete including a lack of understanding on how to test cylinders, particularly procedures for a low break on a cylinder.** (Ex. 68—Golden Aff. ¶ 13.)

    Response: **DISPUTED.** (PX 1, Mercer Affidavit, ¶ 3.)

34. **The first low break ever reported from the Third Division was in August 2012; however, a total of seventy (70) Concrete Management System reports contained one or more low breaks between January 2011 through April 2012 yet went unreported.** (Ex. 68—Golden Aff. ¶ 16.)

    Response: **DISPUTED.** (PX 1, Mercer Affidavit, ¶ 4.)

47. ….

    **Buddy Cox provided a rebuttal to Davis for each contention raised by Mercer at** the pre-dismissal conference. (Ex. 70—Davis Aff. ¶ 17, Attachment E).

    Response: **DISPUTED.** (PX 1, Mercer Affidavit, ¶ 5.)

48. **When Mercer was terminated on June 7, 2012, Brian Davis recommended on the Form 11 that Mercer not be reemployed or rehired.** (Ex. 66—Dukes Aff. ¶ 6, Attachment B, Box 34).

    Response: **DISPUTED.** (PX 3,  Lamar Windham Depo, p. 63:23,

64:1-17; PX 4 , Exhibit 11 to Windham Depo.)

50. **Davis did not make his decision to terminate Mercer based on race, but based on the magnitude of Mercer's egregious conduct.** (Ex. 70—Davis Aff. ¶ 24).

    Response: **DISPUTED.** (See ¶¶ 35-40 of Plaintiff's Undisputed

Facts.)

**Davis recommended that Mercer not be rehired because of his numerous violations of the work rules and his egregious conduct that represented a pattern of deceit over a very long period of time.** (Ex. 70—Davis Aff. ¶ 19).

Response:   **DISPUTED.** (See ¶¶ 35-40 of Plaintiff's Undisputed

Facts.)

51. **Waldrop is responsible for keeping records on certification, and Mercer's infractions overlapped with the standards of ALDOT-405, Article 12.7 requiring permanent revocation of concrete certification.** (Ex. 67—Waldrop Aff. ¶ 7, Attachment C p. 8).

Response:   **DISPUTED.** (Shannon Golden was found by ALDOT to

have falsified ALDOT records and converted ALDOT property and equipment, but

his concrete certification was never revoked. (Exh. 68, Golden Affidavit, ¶ 20 .)

57. **Ingram disciplined Golden for allowing state employees to use state equipment at his parents' home on state time to test core samples from a concrete poured driveway.** (Ex. 69—Ingram Aff. ¶ 12).

Response:   **DISPUTED.** (PX 5, Letter from B.E. Cox to Shannon

Golden, ¶ 4; PX 3, Woodham Depo., p. 15:3-14.)

59. **Mercer did not engage in the same behavior as Shannon Golden.** (Ex. 1—Mercer Dep. 388:16-20).

Response:   **DISPUTED.** (PX 1, ¶ 6.)

64.   ….

**ALDOT did not demand that Mercer be terminated from Gresham Smith.** (Ex. 71—Mahaffey Dep. 11:2-13).

Response:   **DISPUTED.** (PX 1, ¶ 11; Third Amended Complaint, pp.

8-9, ¶¶ 50-52, ECF Doc. 32, pp. 8-9, ¶¶ 50-52; ECF Doc. 69, p. 18 ("ALDOT admits

all the facts alleged in the third amended complaint.")

>    **ALDOT did not demand that Serco terminate Mercer.** (Ex. 71—
>    Mahaffey Dep.11:14-23, 12:1-11).

>       Response:   **DISPUTED.**  (PX 1, ¶ 11; Third Amended Complaint, p.

9, ¶ 52, ECF Doc. 32, p. 9, ¶ 52; ECF Doc. 69, p. 18 ["ALDOT admits all the facts

alleged in the third amended complaint."])

> 67.   **No supervisor from ALDOT communicated with Serco.**

>       Response:   **DISPUTED.**   (PX 1, ¶ 11; Third Amended Complaint, p.

9, ¶ 51, ECF Doc. 32, p. 9, ¶ 51; ECF Doc. 69, p. 18 ["ALDOT admits all the facts

alleged in the third amended complaint."])

>    **However, Serco stated that it made its decision to terminate Mercer
>    after communicating with Tara Hetzel of Alabama State Personnel
>    Department and Blair Perry, Senior Transportation Engineer with
>    GSP.  "Both Ms. Hetzel and Blair Perry expressed to Mr. Spinney of
>    Serco, that because ALDOT had previously determined Mr. Mercer
>    was not eligible for rehire, he was not permitted to work at any
>    ALDOT site."** (Exhibit 62, page 2, II. B. ¶ 2).

>       Response:   **DISPUTED.** (Third Amended Complaint, p. 9, ¶

51, ECF Doc. 32, p. 9, ¶ 51; ECF Doc. 69, p. 18 ("ALDOT admits all the facts

alleged in the third amended complaint."

### B. PLAINTIFF'S STATEMENT OF ADDITIONAL UNDISPUTED FACTS

1.  **Prior to his discharge, Plaintiff Mercer had never been disciplined by**

**ALDOT.** (Third Amended Complaint, p. 4, ¶ 17, ECF Doc. 32, p. 4; ECF Doc. 69, p. 18 ("ALDOT admits all the facts alleged in the third amended complaint.")

RESPONSE:

**2.  Each of Plaintiff Mercer's annual evaluations reflect that his performance "exceeds standards."** (Third Amended Complaint, p. 4, ¶¶ 13-16, ECF Doc. 32, p. 4; ECF Doc. 69, p. 18 ("ALDOT admits all the facts alleged in the third amended complaint.")

RESPONSE:

3.  **At ALDOT, any disciplinary action that involves more than a five-day suspension is heard first by its chief counsel, its Personnel Director, and the Deputy Director. This group reviews the evidence,and makes a recommendation to the Director.** (PX 3, Woodham Depo., pp. 21:16-23, 22:1-19.)

RESPONSE:

**Articulated Reason for the Discharge**

**4.  Plaintiff Mercer was discharged from his ALDOT employment by a letter dated June 7, 2012, from ALDOT Director. John R. Cooper.** (PX 7.)

RESPONSE:

**5.  In the letter of dismissal, John Cooper stated that an ALDOT investigation revealed that Plaintiff had**

**falsified State Inspection Documents from August 2011 through February 2012. The investigation further revealed that you either failed**

7

**to properly inspect a number of plants or that you did not inspect them at all. In addition to this, you allowed uncertified employees to test materials and enter the results under your login and password.**

PX 7, p. 1.

RESPONSE:

**Alleged Falsification of State Inspection Documents**

**6.   ALDOT admits that because of the lack of an adequate support staff and other job duties which required his more immediate attention, Plaintiff Mercer was sometimes unable to make all of the requisite plant inspections as they became due.** (Third Amended Complaint, p. 5, ¶ 22; ECF Doc. 32, p. 4; ECF Doc. 69, p. 18 ("ALDOT admits all the facts alleged in the third amended complaint.")

RESPONSE:

**7.   Because he was consumed by other duties and short-staffed, Plaintiff Mercer did not inspect Kirkpatrick Concrete (318) for the months of November 2011, December 2011, and January 2012. ALDOT admits this fact.** (Exh. 1, p. 337:1-20; (Third Amended Complaint, p. 5, ¶ 24, ECF Doc. 32, p. 5, ¶ 24; ECF Doc. 69, p. 18 ("ALDOT admits all the facts alleged in the third amended complaint." )

RESPONSE

**8.   Until the summer of 2011, Plaintiff Mercer and Nathan Hightower**

were the only employees in the Third Division who were certified to make plant
inspections. (Exh. 1, p. 373:12-21.)

RESPONSE:

**9.  Before he left the Third Division in the summer of 2011, Hightower
had made most of the monthly plant inspections in the Third Division.**  (Exh. 1,
p. 374:10-12.)

RESPONSE:

**10.  After Hightower left the Third Division, Plaintiff Mercer had the sole
responsibility of making the monthly plant inspections.**  (Exh. 1, p. 374:18-22.)

RESPONSE:

**11. Wayne Givan, a USA Concrete official interviewed by Jemison,
recalled that sometime after Nathan Hightower left the Third Division, "I met
Ben Mercer and he rode out with me to check out some of our concrete plants.
…. The only plants I took him to were Calera, Helena, and Bessemer."** (Exh. 65,
p. 11; Exh. 1, pp. 354:11-19, 346:4-6 ).

RESPONSE:

**12.  Although not in an ALDOT vehicle, Plaintiff Mercer duly
inspected USA Plant 313 on August 29, 2011, October 4, 2011, and December
15, 2011.**  (Third Amended Complaint, pp. 6-7, ¶¶ 27-35, ECF Doc. 32, pp. 5-7, ¶

27-35; ECF Doc. 69, p. 18 ("ALDOT admits all the facts alleged in the third amended complaint.")

RESPONSE:

**13.   Plaintiff Mercer inspected USA Plant 308 on September 14, 2011; and USA Plant 312 on December 15, 2011.** (PX 1, ¶ 8; Third Amended Complaint, pp. 6-7, ¶¶ 27-35, ECF Doc. 32, pp. 5-7, ¶ 27-35; ECF Doc. 69, p. 18 ("ALDOT admits all the facts alleged in the third amended complaint.")

RESPONSE:

**14.   Plaintiff Mercer inspected USA Plant 308, Plant 312, and Plant 313 on January 6, 2012.**  (Third Amended Complaint, pp. 6-7, ¶¶ 27-35, ECF Doc. 32, pp. 5-7, ¶ 27-35; ECF Doc. 69, p. 18 ("ALDOT admits all the facts alleged in the third amended complaint.")

RESPONSE:

**15.   Plaintiff Mercer inspected Sherman Plant 311 on January 6, 2012, and again on February 14, 2012. The plant is located on the southside in downtown Birmingham.**   (PX 1, ¶ 7; Third Amended Complaint, pp. 6-7, ¶¶ 27-35, ECF Doc. 32, pp. 5-7, ¶ 27-35; ECF Doc. 69, p. 18 ("ALDOT admits all the facts alleged in the third amended complaint."); PX 1 ¶ 7 Plaintiff's Affidavit.

RESPONSE:

**16.   The Ready-Mix Cement Company official interviewed by ALDOT's**

Slaton Jemison reported that "because our plants are so spread out I thought it would be helpful for Ben and I to ride together. It made it easier for me when we would do this because if there were anything wrong, I knew about it right away." (Exh. 65, Statement of Ready Mix Official, p. 9 ).

RESPONSE:

17.   An official of Bama Cement Company reported to Jemison that "I have picked Ben up on numerous occasions to do plant inspections. …. When I would pick Ben up we would go to each of the Bama plants in the 3rd Division. " (*Id.*, Statement of Bama Official, p. 10.)

RESPONSE:

18.   On November 29, 2011, Plaintiff Mercer inspected Bama Plant 344 and Bama Plant 345 after having been picked up by a Bama official. (Third Amended Complaint, pp. 6-7, ¶¶ 27-35, ECF Doc. 32, pp. 5-7, ¶ 27-35; ECF Doc. 69, p. 18 ("ALDOT admits all the facts alleged in the third amended complaint." )

RESPONSE:

19.   Plaintiff Mercer inspected Bama Plant 344 and Bama Plant 345 on January 3, 2012. (Third Amended Complaint, pp. 6-7, ¶¶ 27-35, ECF Doc. 32, pp. 5-7, ¶ 27-35; ECF Doc. 69, p. 18 ("ALDOT admits all the facts alleged in the third amended complaint." )

RESPONSE:

**20.  Notwithstanding the unreliable GPS records, Plaintiff Mercer spent a sufficient amount of time to completely inspect Bama Plant 341 on January 6, 2012.**  (PX 1, ¶ 7; Third Amended Complaint, pp. 6-7, ¶¶ 27-35, ECF Doc. 32, pp. 5-7, ¶ 27-35; ECF Doc. 69, p. 18 ("ALDOT admits all the facts alleged in the third amended complaint." )

RESPONSE:

**21.  <u>On September 14, October 4, December 15, 2011, and January 3, 2012, Plaintiff Mercer spent a sufficient amount of time at each plant to adequately inspect the plant.  ALDOT admits these facts.</u>**  (Third Amended Complaint, pp. 6-7, ¶¶ 27-35, ECF Doc. 32, pp. 6-7, ¶¶ 27-35; ECF Doc. 69, p. 18, ("ALDOT admits all the facts alleged in the third amended complaint." ), PX 1 ¶ 8 Plaintiff's Affidavit.

RESPONSE:

**22.  There were flaws in GPS devices installed on vehicles in the Third Division during the period 2010-2012.** (PX 2, Perine Depo., p. 166:2-3. **<u>ALDOT concedes that its GPS system is consistently unreliable.</u>**  (Third Amended Complaint, p. 6, ¶ 26, ECF Doc. 32, p. 6, ¶ 26; ECF Doc. 69, p. 18 ("ALDOT admits all the facts alleged in the third amended complaint.".) **Sometimes the GPS fails to register the actual location; sometimes they would not activate until the vehicle had traveled some distance.** (Perine Depo., p. 166:8-15, 175:21-22.) **The GPS**

installed on her vehicle would sometimes show her as being parked blocks away instead of where she was actually parked at her office on Bankhead Highway. (*Id.*, pp. 170:11-23, 171, 172, 173:15.)

      RESPONSE:

23.   **Plaintiff Mercer's supervisor Ms. Perine sometimes personally inspected plants because of the Department was short-staffed.** (PX 2, Perine Depo., p. 112:7-9.)

      RESPONSE:

24.  **Based on her personal experiences, it is possible to perform a plant inspection in three or four minutes if the inspector is familiar with the plant.** (*Id.*, p. 186:12-14). **<u>ALDOT admits that the time required for making a concrete plant inspection varies from a few minutes to a half hour.</u>** (Third Amended Complaint, p. 5, ¶¶ 23, ECF Doc. 32, p. 5 ¶ 23; ECF Doc. 69, p. 18 ("ALDOT admits all the facts alleged in the third amended complaint." )

      RESPONSE:

      **Alleged Failure to Calibrate and Lack of Hand Tools**

25.  **After the new machine for testing cylinders was acquired and before it was put into use, it was calibrated by Bart Pickett. Plaintiff Mercer reported the same to ALDOT.** (PX 8, May 7, 2012 e-mail from Perine to Bart Pickett.)

      RESPONSE:

**26.   Except for a hand saw, which was delivered two months after it was requisitioned, the lab always had the necessary hand tools needed to trim and measure cylinders. ALDOT concedes this fact**. (PX 1, ¶ 9 Plaintiff's Affidavit; Third Amended Complaint, p. 5, ¶ 25, ECF Doc. 32, p. 5, ¶ 25; ECF Doc. 69, p. 18 ("ALDOT admits all the facts alleged in the third amended complaint.")

RESPONSE:

**Subordinate Employees' Use of Plaintiff's Log-in Name**

**27.   <u>Plaintiff Mercer had the approval of his supervisor to permit his subordinate employees to test cylinders while he was out of the building and enter the test results in the CMS under his name</u>. ALDOT concedes this fact.** (Third Amended Complaint, p. 7, ¶¶ 38-39, ECF Doc. 32, p. 7, ¶¶ 38-39; ECF Doc. 69, p. 18 ("ALDOT admits all the facts alleged in the third amended complaint."; PX 1, ¶ 10 Plaintiff's Affidavit.)

RESPONSE:

**28.   Before he became certified, Plaintiff Mercer's supervisor would authorize him to enter information on the computer using the supervisor's name.** (Exh. 1, pp. 212:14-23, 213:1-15, PX 1 ¶ 10 Plaintiff's Affidavit.)

**ALDOT's Disciplinary Actions for Falsification of Records**

**29.  Between 2008 and June 1, 2012, seven Third Division employees were**

**disciplined for falsification of records.**[1] PX 9, Steve Dukes Depo, pp. 11: 23, 13-22.)

RESPONSE:

**30. Richard Bean was suspended for two weeks for falsification of records, failure to perform his job properly, leaving the job without permission, and unauthorized operation of vehicles.** (*Id.*, pp. 13-15, 15:1). **Before his suspension, he had been disciplined several times.** (*Id.*, p. 14: -250, 15:1.)

RESPONSE:

**31.  Carl Hines was suspended for a day after falsifying records by stating on his employment application that he had not been involuntarily terminated.** (*Id.*, p. 15:8-23.)

RESPONSE:

**32.  Michael N. Reynolds received a written reprimanded for falsification of records, after he had previously been counseled and warned about his attendance.** (*Id.*, p. 16:5-17.) **Before being suspended for falsification of records, David H. Brown was reprimanded for sleeping on the job**; **then he voluntarily quit his ALDOT job "because of unfair and discriminating actions that have been taken against [him]."** (*Id.*, p. 17: 5-23.)

_____

[1] ALDOT refused to produce documents for its entire workforce. PX ?, Steve Dukes Depo., pp. 23-27. It should reasonably be inferred that if such documents had been produced, they would not have been favorable to ALDOT

RESPONSE:

**33.  Brandon Johnson was dismissed for falsification of records after he had previously received two written reprimands, two written warnings, and four counseling sessions.** (*Id.*, pp. 18: 9-23, 19, 20:1-19.)

RESPONSE:

**34.  Lee Cook was recommended for discharge for falsification of records after he had previously been warned about falsification of records and counseled for excessive tardiness.**  (*Id.*, pp. 21, 22:1-9.)

RESPONSE:

## The Racial Actions of Brian Davis

**35.    Davis refused to act on a black supervisor's reports that a subordinate white employee was inebriated on the job.** (PX 2, Perine Depo., pp. 37:14-23, 38:1-8.)

RESPONSE:

**36. Davis commented that he would not touch a black female applicant "with a ten-foot pole."** (*Id.,* pp. 53:9-20, 54:4-5.)

RESPONSE:

**37**.  **Davis refused to properly classify a non-white because he did not want to give the employee the impression that he could move up to the next higher job.** (*Id.*, pp. 55:3-23. 56:1-20.)

RESPONSE:

**38.   Davis asked his white secretary to remove from her desk a framed picture of her racially mixed grandchildren, whose appearance is obviously black.**  (*Id.*, p. 62:72-11.)

RESPONSE:

**39.   Davis had a GPS secretly installed on the state vehicle of black ALDOT employees, but not the white employees.**  (*Id.*, p. 139:19-23, 40:1-6.)

RESPONSE:

**40.   Davis would not act on the black supervisor's reports of improper activities of white employees, but he would immediately address her reports of improper activities of black employees.** (*Id.*, pp. 88:5-19.)

RESPONSE:

**Failure to Confer with Plaintiff's Direct Supervisor**

**41.   Plaintiff Mercer's direct supervisor, Ms. Audrey Perine in March 2011 was directed by her supervisor Brian Davis to give Shannon Golden access to the Third Division; she had no idea of why Golden was coming and was not given a reason why Golden appeared to work in the Third Division Concrete Lab.** (*Id.*,  p. 104:1-22.)

RESPONSE:

**42.   Ms. Perine was told that she would not longer supervise Plaintiff; rather that Golden would supervise the Concrete Department, "signing leave slips and everything that was related to Mr. Mercer."** (*Id.*, p. 133:3-13.)

RESPONSE:

**43.   ALDOT's Rule 30(b)(6) witness testified that in determining whether an employee should be discharged, it is important to have input from the employee's direct supervisor.** (PX 3, Woodham Depo., pp. 22:20-23, 23:1-15.)

RESPONSE:

**44.   Ms. Perine had no input in the investigation of Plaintiff Mercer or in the decision to discharge him.**   (PX 2, Perine Depo., pp. 65:18-20, 131:10:23, 132:6-21.)

**Comparator Shannon Golden**

**45.   An ALDOT investigation revealed that on January 25, 2010, at approximately 2:30 PM, Shannon Golden directed three subordinate ALDOT employees (Thomas Golson, Mike Gardner, and Brady Sumrall) to come with him to his father's home in Elmore County to conduct concrete tests and obtain core samples from a recently poured concrete slab.** (PX 5, Letter from B.E. Cox to Shannon Golden.)

RESPONSE

46.   **The ALDOT investigation also revealed that using a state vehicle pulling a trailer with state equipment, the employees traveled to the home of Golden's father. Roughly two hours later, they returned to Montgomery with the core samples. Golden then directed Golson to have the core samples tested in the ALDOT lab; and to falsely report that the samples were being tested for training purposes.** (*Id.*)

RESPONSE:

47.   **The investigation also revealed that on another day, Golden directed the same three subordinate employees to take the state vehicle and equipment back to his father's home and to patch over the slab from which the core samples had been removed. Again two and a quarter hours were consumed in performing these tasks.** (*Id.*, ¶ 2.)

RESPONSE:

48.   **After the core samples had been tested in the ALDOT lab, Golden complained that the ALDOT trucks had damaged his father's driveway during the pouring of the slab. As a result of this claim, USA Concrete Company treated the concrete slab with an epoxy coat at no additional cost.** (*Id.,* ¶ 3.)

RESPONSE:

49.   **Golden's misappropriation of ALDOT property was valued at $1,256.58.** (PX 5, p. 2, ¶ 4.)

RESPONSE:

**50.   The investigation also revealed that during the summer of 2010, Golden borrowed a gas-powered post hole digger, ALDOT's property, from another employee. During work hours and using a state vehicle, Golden and the employee took the post hole digger to Golden's home and left it there. Then Golden directed Golson to come to his home and assist him in using the post hole digger.  The following week, Golden directed Sumrall and Golson to go to his home and pick up the post hoke digger. They complied and retrieved the post hole digger using a state vehicle.** (*Id.*, ¶ 4.)

RESPONSE:

**51.   Golden admitted taking home for his personal use the pressure washer assigned to the ALDOT Concrete Lab.** (*Id.*, ¶ 5.)

RESPONSE:

**52.  Golden admitted to giving permission to other state employees to take home for their personal use ALDOT equipment assigned to the Concrete Lab.** (*Id.*, ¶ 5.

RESPONSE:

**53.   After completion of the investigation, Golden's supervisor, B.E. Cox, recommended to Director that Golden be suspended for thirty (30) days and be made to reimburse ALDOT.** (PX 5, p. 2. ¶ 3). **This recommendation   was**

"subject to change based on administrative review and the final decision of the Director." (*Id.*)

RESPONSE:

54.   **The Director found that Golden had failed to perform his job properly, that he had unauthorized possession of ALDOT property, that he had falsified records, and that he had operated state vehicles and equipment without authorization.** (Exh. 68, Golden Affidavit, p. 5, ¶ 20.)

RESPONSE:

55.   **On October 2, 2011, the Alabama Ethics Commission determined that Golden had committed two violations of the Alabama Ethics Law.** (Exh. 68, Attachment J.)

RESPONSE:

56.   **In 2008, according to his supervisor, Golden had performance problems in aggregate testing and knowing the aggregate's performance on various materials.** (PX 3, Woodham Depo., p. 30:16-21.)  **In 2009,  Golden had performance problems in concrete and pre-stress areas.** (PX 3, Woodham Depo., p. 31:9-19.)

RESPONSE:

**57.  The Rules of the State Personnel Board apply both to Plaintiff and Golden. The Rule prohibiting falsification of documents is a common work rule applying to all ALDOT employees.** (PX 3, Woodham Depo., p. 36:1-16,)

RESPONSE:


**Insubordination/Endangerment of Life or Property**

**58.  ALDOT does not know of any instance in which Plaintiff's supervisor directed him to do something, and Plaintiff failed to do it.** (PX 3, Woodham's Depo., p. 40:2-6.)

RESPONSE:

**59.  Plaintiff was not charged by ALDOT with having violated a safety rule which endangers life or property.** (PX 3, Woodham Depo., p. 37:2-12.)

RESPONSE:

**EEOC Finding of Reasonable Cause**

**60.  After its investigation of Plaintiff's charge under Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, the Equal Employment Opportunity Commission found reasonable cause to believe that ALDOT violated Title VII, based on its differential treatment of Plaintiff and a similarly situated white employee.** (PX 10, p. 1.)

RESPONSE:

**Retaliation**

**61.   Following his discharge by ALDOT, Plaintiff Mercer applied for a concrete position at Serco, and was awarded the job. When ALDOT learned of his new employment, it demanded that Serco fire the Plaintiff; and Serco did so.**  (PX 1, ¶ 11; Third Amended Complaint, p. 9, ¶¶ 50-52, ECF Doc. 32, p. 9, ¶¶ 50-52; ECF Doc. 69, p. 18 ("ALDOT admits all the facts alleged in the third amended complaint." )

RESPONSE:

## C.   ARGUMENT

Plaintiff's argument is exceedingly short. For the plain fact is that if all the relevant facts are agreed to by the parties, then ALDOT's motion for summary judgment must be denied. If there are disputed facts, summary judgment is singularly inappropriate.

Construing the evidence in a light most favorable to Plaintiff Mercer, he  did not falsify state inspection documents. He did not fail to properly inspect the concrete plants that he inspected. Because of staffing problems, he could not inspect all of the concrete plants which should have been inspected. He allowed uncertified employees to test materials and enter the results under his log-in and password, pursuant to longstanding ALDOT policy, *and* with the approval of his supervisor.

None of these facts, separately or severally, are grounds for discharge.

Again, construing the evidence in a light more favorable to Plaintiff Mercer, he is certainly similarly situated to Shannon Golden. They work under the same rules; they are both ALDOT supervisors. They were both charged with violating the same work rules. The fact that Golden's violations were more serious than the alleged violations of Plaintiff—in fact, Golden committed one or more felonies under Alabama law—does not mean that he is not a comparator.

Plaintiff Mercer and Golden were both disciplined by ALDOT's final decisionmaker, John Cooper. If ALDOT disputes this fact, then the favorable inferences from the admitted facts would require a dismissal of its summary judgment motion. Moreover, if Brian Davis is the ALDOT's decisionmaker, then racial discrimination must be attributed to his motivation. If Buddy Cox was Golden's decisionmaker, then he was surely aware of the "golden glove" when he participated in the investigation of Plaintiff Mercer.

Plaintiff Mercer's retaliation claim is based on a subsequent charge he filed with the EEOC. ALDOT's insistence that Serco discharge him was a classic "blacklisting" example. ALDOT had notice of the claim throughout the discovery period.

ALDOT's asserted "inability to rehire" argument falls under its own weight.

This is so because the evidence shows that except for Plaintiff Mercer, none of the ALDOT employees who have been guilty of falsification of records – including Shannon Golden[2] --  has lost his concrete certification for that reason.

Likewise, ALDOT's argument that is was not Plaintiff's employer, that Plaintiff did not engage in protected activity, that he did not suffer an adverse employment action, and that there is not causal connection between Plaintiff's filing of the retaliation charge and its demand that Serco discharge him – are all belied by the facts and the reasonable inferences flowing therefrom.

### Conclusion

For all these reasons, ALDOT's summary judgment motion should be denied.

Respectfully submitted,

*U.W. Clemon*
U.W. Clemon    CLE045
U.W. Clemon, LLC
P.O. Box 2365
Birmingham, AL 35203
Phone: 205 506-4524
Fax:   205 798-2977
e-mail: clemonu@bellsouth.net

ATTORNEY FOR PLAINTIFF

---

[2] Not without significance, Golden is the ALDOT official who recommended that Plaintiff Mercer's concrete certification be revoked.

**Certificate of Service**

I hereby certify that on this 11th day of June 2011, I have electronically filed this Response with the Clerk of the Court using the CM/ECS system, which will provide electronic notification to counsel for all parties.

*U.W. Clemon*
U.W. Clemon
