## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **BENJAMIN F. MERCER,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 2:16-cv-01204-RDP** |
| | } | |
| **ALABAMA DEPARTMENT OF** | } | |
| **TRANSPORTATION,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OPINION

This case is before the court on Defendant Alabama Department of Transportation's ("ALDOT") Motion for Summary Judgment. (Doc. # 68). The Motion has been fully briefed (*see* Docs. # 69, 82-83), and it is ripe for review. After careful review, and for the reasons explained below, the court concludes that Defendant's Motion for Summary Judgment is due to be granted.

## I.     Factual Background[1]

This employment discrimination and retaliation action concerns Defendant ALDOT's termination of Plaintiff in June 2012 and Serco, Inc.'s termination of Plaintiff in August 2016. First, the court addresses Defendant's objection to Plaintiff's summary judgment affidavit. Second, the court discusses Plaintiff's employment history at ALDOT and his termination from ALDOT. Third, the court outlines Plaintiff's filing of a charge with the Equal Employment

---

[1]     The facts set out in this opinion are gleaned from the parties' submissions and the court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts that could be established through live testimony at trial. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

Opportunity Commission ("EEOC"), his employment at Serco, and his termination from Serco. Finally, the court provides relevant information about Shannon Golden, Plaintiff's proposed comparator.

### A.   Defendant's Objection to Plaintiff's Affidavit is Due to be Overruled

In its reply brief, Defendant argues that Plaintiff's summary judgment affidavit should be disregarded because it is a sham affidavit that directly contradicts his deposition testimony. (Doc. # 83 at 1-2). "A court may determine that an affidavit is a sham when it contradicts previous deposition testimony and the party submitting the affidavit does not give any valid explanation for the contradiction." *Latimer v. Roaring Toyz*, 601 F.3d 1224, 1237 (11th Cir. 2010). "When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984). The court must apply the sham affidavit doctrine sparingly, though, "because of the harsh effect it may have on a party's case." *Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1316 (11th Cir. 2007) (quoting *Rollins v. TechSouth*, 833 F.2d 1525, 1530 (11th Cir. 1987)).

Here, the court declines to apply the sham affidavit rule because Defendant has not identified which portions of Plaintiff's deposition testimony are in direct conflict with his later-filed affidavit. Instead, Defendant summarily argues that the two conflict and that the court accordingly should disregard Plaintiff's affidavit. (*See* Doc. # 83 at 1-2). The court will not comb through Plaintiff's entire deposition to determine which paragraphs of his affidavit, if any,

unambiguously conflict with his earlier testimony. Therefore, Defendant ALDOT's evidentiary objection to Plaintiff's declaration is overruled.[2]

## B. Plaintiff's Employment at ALDOT and Termination from ALDOT

ALDOT hired Plaintiff, a black male, in March 2008 as a transportation technologist in its Third Division Materials and Test Bureau ("Third Division"). (Docs. # 32 at ¶ 4; 70-1 at 22; 70-3 at 1).[3] Plaintiff worked as a concrete lab technologist and supervised two engineering assistants. (Doc. # 70-20 at 1). Audrey Perine, a materials engineer at ALDOT, supervised Plaintiff. (Docs. # 70-1 at 93; 70-20 at 1). As a concrete lab technologist, Plaintiff inspected records, reports, concrete equipment, delivery trucks, and raw materials at concrete plants to ensure that they complied with ALDOT's standards. (*See* Doc. # 70-20 at 2). Plaintiff also reviewed concrete mixes to ensure that they were used for the proper structures and communicated with project managers. (*Id.*). Plaintiff was responsible for supervising engineering assistants and ensuring that they performed concrete testing and quality assurance in a timely manner. (*Id.*). Plaintiff's annual performance appraisals exceeded standards in 2008, 2009, 2010, and 2011. (Doc. # 74-18 at 10).

Each concrete plant in the Third Division that supplied concrete to ALDOT is to be inspected at least once a month. (Doc. # 70-1 at 111). During inspections, Plaintiff spoke to on-site technicians, inspected paper records, inspected concrete mix components to ensure that there was no contamination, checked the temperatures of cement and concrete mixed at the plant,

---

[2] Additionally, Defendant's objection to the affidavit is overruled in the alternative because none of the averments in the affidavit change the court's analysis of the motion for summary judgment. *See, e.g.*, *Sanford v. Omni Hotels Mgmt. Corp.*, No. 3:16-cv-1578-J-34PDB, 2018 WL 1327090, at *8 (M.D. Fla. Mar. 15, 2018) (explaining why the objected-to evidence did not change the court's analysis).

[3] For purposes of this summary judgment motion, Defendant ALDOT concedes that the facts alleged in the Third Amended Complaint are true. (Doc. # 69 at 18). Accordingly, the court discusses those allegations in this Memorandum Opinion and has accepted them as true for purposes of analyzing Defendant's motion.

and inspected the plant's "diary."[4] (*See id.* at 124-36, 159). If a concrete truck was present at the plant, Plaintiff inspected the truck to ensure that it had been cleaned and that a counter inside the truck had been reset. (*See id.* at 141-42). While inspecting a plant, Plaintiff filled out a BMT-95 form. (*Id.* at 101-03; Doc. # 71-10). Plaintiff completed some portions of the BMT-95 form before arriving at a plant. (Doc. # 70-1 at 146-47). Plaintiff testified that a plant inspection could be completed in three to ten minutes. (*Id.* at 259, 264, 270).

Plaintiff conducted concrete strength tests for the Third Division and was trained to "break" concrete cylinders in order to test their strength. (*Id.* at 213, 220). Plaintiff was the only certified technician who could conduct concrete cylinder tests in the Third Division. (Doc. # 74-3 at 4). Plaintiff allowed uncertified ALDOT employees to conduct tests while he was out of the lab and to enter the test results into ALDOT's computer records under his name. (*Id.* at 215; Doc. # 32 at ¶¶ 38-39). Plaintiff testified that Audrey Perine authorized the use of his name and password by uncertified employees. (Doc. # 70-1 at 214, 216).

In November 2011, ALDOT discovered concrete integrity concerns while investigating a bridge project. (Doc. # 74-1 at 2). That month, Shannon Golden, the concrete engineer for ALDOT, requested copies of BMT-95 forms from ALDOT's Third Division, Fourth Division, and Sixth Division for inspections conducted in August, September, and October 2011. (Doc. # 74-3 at 3, 20). On November 23, 2011, Golden informed Perine and Plaintiff that he was missing several BMT-95 forms and that he had received no BMT-95 forms for twelve concrete plants in the Third Division. (*Id.* at 19-20). Golden estimates that the Third Division completed less than forty percent (40%) of the BMT-95 forms that should have been completed. (*Id.* at 3).

---

[4] Plaintiff has not objected to Defendant's description of a concrete plant inspection. (*See* Docs. # 69 at 6; 82 at 2).

Plaintiff has explained that he was unable to complete all of the required concrete plant inspections because the Third Division was understaffed. (Doc. # 32 at ¶ 22).

In December 2011, Andrew Waldrop and Golden inspected a concrete plant in Bessemer, Alabama and discovered "numerous deficiencies" at the plant. (Docs. # 74-1 at 2; 74-3 at 3). Specifically, Golden observed that (1) the plant's diary lacked testing information, (2) no quality control plan for the plant was available, (3) no fresh concrete testing data was available, and (4) the plant lacked quality control equipment, among other rule violations. (Doc. # 74-3 at 21-23). Thereafter, Waldrop and Golden inspected all of the concrete plants in the Third Division that had supplied concrete to ALDOT. (Docs. # 74-1 at 2; 74-3 at 3-4). Waldrop discovered that one plant's documentation "was in such [ ] disarray that it took over an hour to go through just one item on the BMT-95 form checklist." (Doc. # 74-1 at 2-3, 17).

Slaton Jemison, a special investigator for ALDOT, began investigating Plaintiff's work activities in December 2011. (Doc. # 73-15 at 1-2). Jemison reviewed GPS data from the state vehicles assigned to the Third Division and found several instances where Plaintiff's truck remained at a concrete plant for eight minutes or less. (*Id.* at 2-3). Jemison identified eighteen instances on November 29, 2011, December 15, 2011, January 3, 2012, and January 6, 2012 where Plaintiff's truck stopped at an inspected concrete plant for less than ten minutes or never went close to a plant at all. (*See id.* at 7). ALDOT's GPS system was "consistently unreliable," though. (Doc. # 32 at ¶ 26). And, Plaintiff performed "routine and adequate" inspections of the concrete plants identified in Jemison's report. (*Id.* at ¶¶ 31-34). Employees for three concrete producers informed Jemison that they had transported Plaintiff in their vehicles to inspect certain concrete plants. (Doc. # 73-15 at 8-11).

In March 2012, Steven Ingram and Buddy Cox assigned Golden and Waldrop to work temporarily in the Third Division. (Docs. # 74-1 at 3; 74-3 at 4; 74-5 at 1-3). Golden temporarily managed the Third Division's concrete lab for several days in March and April 2012 and worked with Plaintiff. (Doc. # 74-3 at 4). On April 4, 2012, Golden wrote a memorandum to Cox identifying several deficiencies in the Third Division's concrete lab. (Doc. # 74-4 at 5-8). First, Golden stated that the Third Division lacked certified personnel and had three vacant positions. (*Id.* at 5). Perine and Plaintiff told Golden that the Third Division's lab technician had not taken concrete certification courses because he could only take them after being employed by ALDOT for six months. (*Id.* at 5-6). Second, Golden explained that concrete cylinders were improperly transported to the Third Division's lab and allowed to sit in dry air once removed from a curing room. (*Id.* at 6). He noted that Plaintiff never performed certain measurements that he should have performed. (*Id.*). Third, Golden addressed issues with concrete plant inspections. (*Id.* at 6-7).

In April 2012, Brian Davis, an engineer in ALDOT's Third Division, received the findings from the investigation. (Doc. # 74-6 at 1-3). While reviewing the investigative report, Davis discovered for the first time that Plaintiff had allowed uncertified employees to test concrete cylinders and enter data into ALDOT's computer system. (*Id.* at 3). He also learned that Plaintiff had failed to properly inspect concrete plants and falsified records. (*Id.*). After reviewing the investigative reports, Davis recommended Plaintiff's termination because of his egregious conduct. (*Id.* at 4). ALDOT's central office agreed with Davis's recommendation. (*Id.*).

On May 11, 2012, Davis held a pre-dismissal conference with Plaintiff. (*See* Doc. # 74-14 at 16). Plaintiff disputed the charges that he had not inspected certain concrete plants as

reflected in the BMT-95 forms ALDOT had on file. (*See id.* at 16-17). Plaintiff also stated that he never gave anyone his computer information and that he was present whenever ALDOT employees tested concrete cylinders at the lab. (*Id.* at 17). Davis asked Cox and Jemison to review and respond to Plaintiff's statements during the pre-dismissal hearing. (*Id.* at 15). On May 29, 2012, Cox responded to Plaintiff's assertions during the pre-dismissal hearing.[5] (Doc. # 74-15 at 12-16). Davis ultimately recommended Plaintiff's termination for a violation of work rules and did not recommend his reemployment.[6] (Doc. # 73-20 at 7).

On June 7, 2012, John Cooper, ALDOT's transportation director, terminated Plaintiff. (Doc. # 82-6 at 16-17). Cooper explained that ALDOT's investigation found that Plaintiff had (1) falsified inspection documents from August 2011 through February 2012, (2) failed to properly inspect several concrete plants, and (3) permitted uncertified employees to test concrete samples and enter test results. (*Id.* at 16). Cooper concluded that Plaintiff had failed to perform his job properly, been insubordinate, and falsified records. (*Id.* at 17). In addition to the plant inspections discussed in Jemison's report, Cooper discussed discrepancies between Plaintiff's completed inspection reports and ALDOT's records for inspections that occurred on August 29, 2011, September 14 and 15, 2011, October 4, 2011, and February 14, 2012. (*Id.* at 16-17). Plaintiff has averred that he adequately inspected the concrete plants discussed in Cooper's termination letter. (*See* Docs. # 32 at ¶¶ 27-28, 35; 82-1 at 4).

---

[5] Plaintiff avers that Cox "did not rebut [his] contentions at the pre-dismissal conference," but the Rule 56 record shows that Cox responded to Plaintiff's statements after the conference in a memorandum. (Doc. # 82-1 at 4).

[6] Plaintiff disputes that Davis recommended against reemploying him on the date of termination. (Doc. # 82 at 4). But, neither of the exhibits Plaintiff cites in his opposition brief addresses the reemployment recommendation reflected in the recommendation for personnel action form. (*See* Doc. # 82-6 at 2) (pages 63 and 64 of Lamar Woodham's deposition) (discussing the process for revoking Plaintiff's concrete certification). (*See also* Doc. # 82-6 at 8) (discussing the revocation of Plaintiff's concrete certification).

Plaintiff appealed his termination to the Alabama State Personnel Board. (*See* Doc. # 74-18 at 2). In September 2012, a government hearing officer conducted a hearing for the Personnel Board; however, Plaintiff did not appear at the hearing. (*Id.* at 3). Golden and Jemison testified before the hearing officer. (*Id.*). The hearing officer found that Plaintiff "failed to adhere to DOT's policies and procedures for the inspection of the concrete plants" and falsified BMT-95 forms "on forty-seven (47) occasions." (*Id.* at 8-9). Furthermore, he determined that Plaintiff "participated in falsifying DOT reports" when he allowed subordinates to complete concrete testing reports using his employee information on days where he was absent from work. (*Id.* at 9-10). He recommended that Plaintiff's misconduct warranted dismissal because the misconduct was intentional and pervasive, the misconduct occurred over several months, Plaintiff held a supervisory position, the Alabama Administrative Code provided for discharging employees for falsification of records and insubordination, and Plaintiff failed to appear at the hearing or show remorse, among other factors. (*Id.* at 10-15). The hearing officer noted some mitigating circumstances, such as Plaintiff's lack of prior discipline and his positive work evaluations. (*Id.* at 12). In October 2012, the Personnel Board adopted the hearing officer's findings and conclusions and affirmed ALDOT's termination of Plaintiff. (Doc. # 74-19 at 2-3).

### C. Plaintiff's EEOC Charge and ALDOT's Revocation of Plaintiff's Concrete Certification

In September 2012, Plaintiff filed a charge of discrimination against ALDOT with the EEOC. (Doc. # 70-8). He complained of race discrimination because the Third Division's concrete laboratory was the only one ALDOT investigated. (*Id.*). He asserted that ALDOT did not investigate concrete labs supervised by white employees. (*Id.*). And, he stated that ALDOT's concrete engineer was only suspended when he committed an ethics violation. (*Id.*). He denied committing the rule infractions ALDOT relied upon to justify his termination. (*Id.*).

ALDOT's concrete certification program is governed by ALDOT-405. (*See* Doc. # 74-2 at 17-24). Concrete technicians are qualified to inspect concrete for ALDOT. (*Id.* at 18). They must have a grade I certification from the American Concrete Institute. (*Id.* at 19). ALDOT-405 provides that an individual's certifications will be permanently revoked for falsifying records. (*Id.* at 24). In November 2012, ALDOT's concrete working task force, chaired by Golden, discussed charges of abuse and neglect against Plaintiff. (*See* Doc. # 82-6 at 8). The task force unanimously voted to permanently revoke Plaintiff's concrete technician certification. (*Id.*). In January 2013, Golden wrote Cox a memorandum discussing the revocation, which referenced the ALDOT-405 revocation provision for falsifying records. (*Id.*). The memorandum identifies Cox as the chairman of a concrete technician certification board. (*Id.*).

In December 2015, the EEOC determined that it was more likely than not that ALDOT had violated Title VII. (Doc. # 82-7 at 4). It invited the parties to engage in conciliation. (*Id.* at 5). In February 2016, the EEOC determined that conciliation was unsuccessful. (*Id.* at 3).

### D. Plaintiff's Employment at Serco and Termination from Serco

In June 2016, Serco hired Plaintiff. (Doc. # 32 at ¶ 50). Serco acted as a subcontractor for Gresham Smith, and ALDOT contracted with Gresham Smith. (Doc. # 70-1 at 355-56). Michael Mahaffey, an ALDOT employee, learned that Plaintiff was working on an ALDOT job while employed by Serco. (*See* Doc. # 74-17 at 11). Someone asked Mahaffey to contact Gresham Smith and inform it that Plaintiff could not work on any ALDOT project because he had been terminated from ALDOT.[7] (*Id.* at 9). According to Plaintiff's Third Amended Complaint, which Defendant has accepted as true, ALDOT insisted that Serco terminate

---

[7] Mahaffey did not identify who asked him to contact Gresham Smith. (*See* Doc. # 74-17 at 9).

Plaintiff's employment. (Doc. # 32 at ¶ 51). Thereafter, in August 2016, Serco terminated Plaintiff.[8] (*Id.* at ¶ 52).

### E. Plaintiff's Comparator Evidence

Plaintiff identifies Golden as a comparator and claims he was treated more favorably when charged with similar rule infractions. (*See* Doc. # 82 at 24). Golden is a licensed professional engineer with a bachelor's degree in engineering. (Doc. # 74-3 at 2). He worked as ALDOT's concrete engineer from 2008 to 2014. (*Id.*). In that role, he administered the qualification program for concrete producers, wrote and updated ALDOT specifications, policies, procedures, and forms for concrete and related materials, and assisted in handling concrete-related problems. (*Id.*). He did not inspect concrete plants, test concrete cylinders, or work "in any capacity at the division level." (Doc. # 74-5 at 4).

In April 2011, ALDOT charged Golden with failing to perform his job properly, unauthorized possession of ALDOT equipment, unauthorized operation of vehicles and equipment, and falsifying records. (Doc. # 74-3 at 5). These charges were based on three separate incidents of misconduct set forth in a proposed suspension notice prepared by Cox. (Doc. # 82-6 at 10).

First, Golden directed ALDOT employees to accompany him to his father's home to conduct concrete tests and obtain core samples from a slab recently poured by a private concrete company. (*Id.*). After collecting the samples, Golden instructed an ALDOT employee to have them tested in ALDOT's lab and "to tell the lab personnel they were for training purposes." (*Id.*). Later, Golden directed ALDOT employees to return to his father's home (with a state

---

[8] Defendant discusses Serco's account for why it terminated Plaintiff in its statement of material facts. (Doc. # 69 at 16-17) (discussing Doc. # 73-12). Plaintiff objects that this account is contradicted by an allegation in the Third Amended Complaint, which Defendant has accepted as true for purposes of this motion. (Doc. # 82 at 6). Notably, Serco asserted to the EEOC that it terminated Plaintiff because Gresham Smith directed it to remove Plaintiff from ALDOT work at ALDOT's direction. (Doc. # 73-12 at 3).

vehicle and equipment in tow) to patch the slab in the places where the samples had been removed. (*Id.*). After obtaining the test results, Golden complained to the private concrete company that poured the slab about deficiencies in the concrete slab based on the test results. (*Id.*). As a result of Golden's complaint, the concrete company treated his father's slab with an epoxy coat at no additional cost. (*Id.* at 10-11).

Second, the suspension notice also addressed Golden's use of a gas-powered post hole digger in the summer of 2010. (*Id.* at 11). According to the notice, Golden and other ALDOT employees took a post hole digger to Golden's house during business hours, using a state vehicle, and left it there. (*Id.*) Sometime the next week, at Golden's direction, ALDOT employees returned to Golden's home in a state vehicle and retrieved the post hole digger. (*Id.*).

Third, the suspension notice indicated that Golden admitted to taking an ALDOT pressure washer to his home for personal use and to giving other ALDOT employees permission to use ALDOT equipment for personal use, as long as the equipment was returned to the lab in good working condition. (*Id.*).

ALDOT recommended that Golden be suspended for thirty days and required to pay $1,256.58 in reimbursement. (*Id.*). Cooper agreed with the recommended suspension. (Doc. # 82-6 at 14).

Golden waived his right to a suspension hearing and served a thirty-day suspension. (Doc. # 74-3 at 5-6). In May 2011, Golden was charged with violating the Alabama Ethics Law. (*Id.* at 6). In October 2011, the State of Alabama Ethics Commission found that he had committed two violations of the Alabama Ethics Law. (Doc. # 74-4 at 23). Because the Commission deemed the violations "minor" (at least within the meaning of its statutory/regulatory regime), it approved Golden's request for administrative resolution. (*Id.*).

Plaintiff's opposition brief also discusses five Third Division employees who received discipline ranging from a written reprimand to termination for falsifying records. (Doc. # 82 at 15-16). Plaintiff has not argued that any of these individuals are comparators, though, so the court does not discuss their discipline further. (*See id.* at 23-24).

## II.     Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56 requires the non-moving party to go beyond the pleadings and -- by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file -- designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("*Anderson*"). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If

the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

When faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson* teaches, under Rule 56(c) a plaintiff may not simply rest on her allegations made in the complaint; instead, as the party bearing the burden of proof at trial, she must come forward with at least some evidence to support each element essential to her case at trial. *See Anderson*, 477 U.S. at 252. "[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 248 (citations omitted).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Sw. Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing *Anderson*, 477 U.S. at 250-51).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Sawyer*, 243 F. Supp. 2d at 1262 (quoting *Anderson*, 477 U.S. at 251-52); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999)

("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

## III.    Analysis

After careful review, the court concludes that Defendant ALDOT is entitled to partial summary judgment on Plaintiff's claims.

### A.    Plaintiff's Title VII Discriminatory Termination Claim

Typically, Title VII discrimination and retaliation claims that rely on circumstantial evidence are evaluated under the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Chapter 7 Trustee v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1255 (11th Cir. 2012) ("A plaintiff typically makes a case of discrimination through indirect evidence using the burden-shifting framework set out in *McDonnell Douglas* . . . ."). Therefore, the court begins its analysis of Plaintiff's Title VII race discrimination claim under the well-established *McDonnell Douglas* framework.

Under that framework, a plaintiff first has the burden of establishing a prima facie case of discrimination, which creates a rebuttable presumption that the employer acted illegally. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527-28 (11th Cir. 1997), *overruled in part on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S. 454 (2006). Once a plaintiff has presented a prima facie case and, thereby, has raised the presumption of discrimination, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *See Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002). This burden involves no credibility determination, *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509 (1993), and has been characterized as "exceedingly light," *Perryman v. Johnson Prod. Co.*, 698 F.2d 1138, 1142 (11th Cir. 1983).

If the employer satisfies that burden by articulating one or more such reasons, then the presumption of discrimination falls and the burden of production again shifts to the plaintiff to offer evidence sufficient for a reasonable jury to conclude that the employer's supposedly legitimate reason is merely a pretext for illegal discrimination. *Id.* If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it. *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (*en banc*). "If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim." *Id.* at 1024-25.

### 1. Plaintiff's *McDonnell Douglas* Prima Facie Evidence

A Title VII plaintiff claiming that he suffered a discriminatory discharge must show four factors to establish a prima facie case: "(1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was replaced by a person outside his protected class or was treated less favorably than a similarly-situated individual outside his protected class." *Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Educ.*, 342 F.3d 1281, 1289 (11th Cir. 2003). Here, Defendant only contests whether Plaintiff can meet the fourth prong of the prima facie test. Plaintiff presents no evidence regarding who replaced him after his June 2012 termination. Therefore, Plaintiff's prima facie case rests on whether he has an appropriate comparator. *See Maynard*, 342 F.3d at 1289.

The employees identified as comparators by a Title VII plaintiff must be similarly situated in all relevant respects. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004). The Eleventh Circuit has held this means that "[t]he comparator must be nearly identical to the plaintiff." *Id.*; *Maniccia v. Brown,* 171 F.3d 1364, 1368 (11th Cir. 1999). "In determining

whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Maniccia*, 171 F.3d at 1368 (quoting *Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306, 1311 (11th Cir. 1998)). Thus, the Eleventh Circuit requires "the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Id.* "Misconduct merely 'similar' to the misconduct of the disciplined plaintiff is insufficient." *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1280 (11th Cir. 2008) (quoting *Burke-Fowler v. Orange Cty., Fla.*, 447 F.3d 1319, 1323 n. 2 (11th Cir. 2006)).

In one published opinion, the Eleventh Circuit addressed an argument that the misconduct committed by the plaintiff, a correctional officer, was comparable to the misconduct committed by two other employees. *See McCann v. Tillman*, 526 F.3d 1370, 1374-75 (11th Cir. 2008). That discussion illustrates how our court of appeals applies the comparator standard. In *McCann*, the plaintiff received a fifteen-day suspension for conduct unbecoming of an officer, disorderly conduct, and violating a uniform ordinance after she confronted officers in another jurisdiction's jail -- where her son had been incarcerated -- while off-duty and wearing her uniform. *Id.* at 1372. One of her comparators received no formal suspension or discipline "after being convicted of disorderly conduct and resisting arrest following a dispute with her daughter-in-law," despite a determination that the employee had engaged in conduct unbecoming of an officer. *Id.* at 1374. The Eleventh Circuit held that the plaintiff's conduct was not nearly identical to the conduct of her first comparator because the plaintiff committed her infraction in public, she wore her uniform, and she directed her conduct at another law enforcement officer.

*Id.* at 1374-75. The court emphasized that the plaintiff attempted to use her public office "to obtain a personal goal," whereas her comparator did not. *Id.* at 1375.

The *McCann* plaintiff's second comparator received a written reprimand, but no suspension, for making "vulgar comments and unprofessional statements to a nurse attending an inmate he was escorting." *Id.* The Eleventh Circuit held that this comparator's misconduct also was not "nearly identical" to the plaintiff's misconduct because (1) the comparator did not violate the sheriff's department's uniform policy because his misconduct occurred while on duty, (2) the comparator berated a civilian, rather than an officer in another jurisdiction, and (3) the comparator did not use his office for a private purpose. *Id.* Because the plaintiff in *McCann* failed to present a proper comparator, the Eleventh Circuit held that she raised no prima facie case of discrimination and affirmed the summary judgment entered against her. *Id.*

Here, as in *McCann*, Golden is an improper comparator because Plaintiff and he were not involved in nearly identical misconduct. ALDOT ultimately found Plaintiff guilty of insubordination, falsification of documents, and improperly performing his job because he had failed to inspect some concrete plants, falsified documents to show that he had in fact inspected those plants, and allowed uncertified employees to conduct concrete tests and enter concrete testing data in ALDOT's computer records under his name. (Doc. # 82-6 at 16-17). In contrast, ALDOT charged Golden with misappropriating ALDOT vehicles, equipment, and personnel for personal use. (Doc. # 82-6 at 10-11). Specifically, ALDOT charged Golden with using ALDOT resources to test and repair his father's personal concrete slab and using those testing results to secure free services from the private company that poured the slab. (*Id.*). ALDOT also claimed Golden used state equipment for personal purposes without authorization and permitted other employees to do the same. (*Id.* at 11). Though Golden's misconduct was no doubt serious, it

was not "nearly identical" to Plaintiff's misconduct under the demanding standard the Eleventh Circuit has announced in *McCann* and other cases. Thus, Golden is not an appropriate comparator for Plaintiff to use in establishing a Title VII claim.[9]

Plaintiff argues that Golden should qualify as a comparator because he committed more serious misconduct but received a lighter penalty from the same final decisionmaker. (Doc. # 82 at 24). The court is inclined to agree with Plaintiff that a jury could find Golden's misconduct should be classified as more serious than Plaintiff's. After all, Golden (and his father) personally benefited from his intentional misconduct, and the misconduct was deemed to be a violation of state ethics laws. The court also recognizes that other circuits have rejected comparator standards that disregard an employer's treatment of employees who commit more serious (but not nearly identical) infractions than the plaintiff. *See, e.g.*, *Lynn v. Deaconess Med. Ctr.-West Campus*, 160 F.3d 484, 488 (8th Cir. 1998) ("To require that employees always have to engage in the exact same offense as a prerequisite for finding them similarly situated would result in a scenario where evidence of favorable treatment of an employee who has committed a different but more serious, perhaps even criminal offense, could never be relevant to prove discrimination. Common sense as well as our case law dictate that we reject such an approach."), *abrogated in part on other grounds by Torgeson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011) (*en banc*); *Coleman v. Donahoe*, 667 F.3d 835, 851 (7th Cir. 2012) (concluding that the plaintiff, who was terminated for threatening a supervisor, could use two employees who threatened a co-

---

[9] Defendant discusses differences between Plaintiff's job duties and Golden's job duties to argue that Golden is not a comparator. (Doc. # 69 at 19-20). The court grants little weight to this argument because "differences in job ranks between a plaintiff and another employee are not, in and of themselves, dispositive as to whether the two individuals may be compared for purposes of evaluating a discrimination claim." *Rioux*, 520 F.3d at 1281. The court also is unconvinced by Defendant's contention that different decisionmakers imposed discipline on Golden and Plaintiff because the Rule 56 record shows that Cooper, not Davis, terminated Plaintiff. (*See* Doc. # 82-6 at 16-17). *See also Rioux*, 520 F.3d at 1281 (finding the defendants' argument that the plaintiff and comparator were disciplined by different individuals "unpersuasive"). Similarly, Cooper signed the form recommending Golden's thirty-day suspension, indicating that he also participated in Golden's discipline. (Doc. # 74-5 at 20). Accordingly, it is arguable that Cooper was the decisionmaker for both disciplinary actions.

worker with a knife as comparators because their infractions were "at least as serious as [the plaintiff's] indirect 'threat' against [the supervisor]—and arguably even more so"). But here, the court is constrained to follow the Eleventh Circuit's "nearly identical" standard, which does not allow the court to decide whether a comparator's infraction is more serious than the Title VII plaintiff's infraction.

## 2.      Plaintiff's *McDonnell Douglas* Pretext Arguments

Here, Defendant states that it terminated Plaintiff because he falsified business records, failed to properly inspect concrete plants or inspect them at all, and allowed uncertified employees to conduct concrete tests and enter data under his name. (Doc. # 69 at 24-25). Falsifying records is a legitimate, nondiscriminatory reason for termination. *E.g.*, *Kendall v. Cobb Cty., Ga.*, 14 F. Supp. 2d 1342, 1347 (N.D. Ga. 1998) (explaining that a plaintiff's direction to a subordinate to falsify training records was a legitimate, nondiscriminatory reason for a termination), *aff'd*, 189 F.3d 486 (11th Cir. 1999). Plaintiff's argument that Defendant's proffered reasons for firing him are a mere pretext for discrimination again relies on the comparator evidence discussed above. (*See* Doc. # 82 at 23-24). But for the reasons outlined above, Plaintiff's comparator evidence fails to establish a triable issue of pretext because Golden is not a proper comparator under the *McDonnel Douglass* framework, at least in the Eleventh Circuit.[10] *Cf. Silvera v. Orange Cty. Sch. Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001) (concluding that the plaintiff could not show pretext through comparator evidence because the plaintiff was not similarly situated to the comparator).

---

[10]  In his opposition brief, Plaintiff presents undisputed evidence of Davis's racial biases and argues that the court should infer a discriminatory motive for his actions, if the court determines that Davis is the relevant decisionmaker. (Doc. # 82 at 16-17, 24). Nevertheless, Plaintiff argues that Cooper was the final decisionmaker for his termination and Golden's suspension. (*Id.* at 24). As discussed above in footnote 9, the court agrees with Plaintiff's assessment regarding the identity of the decisionmaker in this case. Therefore, Plaintiff's Rule 56 evidence of Davis's racial biases is immaterial because (1) Rule 56 evidence shows that Cooper was the final decisionmaker, and (2) Plaintiff has not argued that Cooper followed a biased recommendation without conducting an independent investigation.

### 3. Other Circumstantial Evidence of Discrimination

The court's conclusion that Golden is not a "nearly identical" comparator under Eleventh Circuit's application of *McDonnell Douglas/Burdine* does not end the court's inquiry. Although it is often useful, the *McDonnell Douglas* framework "is not the exclusive means" of prevailing on a Title VII claim based on circumstantial evidence. *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 768 n. 3 (11th Cir. 2005). A plaintiff's claim will also survive summary judgment if he presents "enough circumstantial evidence to raise a reasonable inference of intentional discrimination." *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1320 (11th Cir. 2012). Thus, the court must undertake a thorough examination of all the circumstantial evidence presented in this case to see if a reasonable inference of discrimination has been raised. The following record evidence is relevant to this question.

First, prior to his termination on June 7, 2012, Plaintiff received annual performance appraisals for 2008, 2009, 2010, and 2011 which all exceeded standards. (Doc. # 74-18 at 10).

Second, Plaintiff has testified that he did not violate the work rule(s) at issue, and there is Rule 56 evidence that Plaintiff's supervisors knew about and authorized the practices that led to his discharge. As Plaintiff has explained, he was unable to complete all of the required concrete plant inspections because the Third Division was understaffed. (Doc. # 32 at ¶ 22). Although Plaintiff admits that he allowed uncertified ALDOT employees to conduct tests while he was out of the lab and to enter the test results into ALDOT's computer records under his name (Docs. # 70-1 at 215; 32 at ¶¶ 38-39), he has testified that his supervisor, Audrey Perine, authorized this practice (Doc. # 70-1 at 214, 216). Plaintiff further testified that it was a longstanding practice in ALDOT's Concrete Division, and that he did the same thing before he was certified with his supervisor's approval. (Doc. # 82-1 at 5).

Third, although Defendant relied, at least in part, on its GPS records to support Plaintiff's termination, there is Rule 56 evidence indicating that ALDOT's GPS system was "consistently unreliable." (Doc. # 32 at ¶ 26). Further, Plaintiff testified that he performed "routine and adequate" inspections of the concrete plants where GPS records did not show Plaintiff's truck. (*Id*. at ¶¶ 31-34). Moreover, employees for three different concrete producers explained that they had transported Plaintiff in their vehicles to inspect certain concrete plants. (Doc. # 73-15 at 8-11). In those circumstances, there would be no GPS trail. The lack of one, therefore, does not necessarily mean Plaintiff did not perform inspections at those plants and on those occasions. Nevertheless, ALDOT purportedly relied on this evidence to terminate the employment of Plaintiff for failing to perform his job properly, being insubordinate, and falsifying records. (Doc. # 82-6 at 16-17).

Fourth, the record also contains evidence that Defendant suspended but did not terminate a white employee for arguably *worse* conduct. Golden, a concrete engineer, directed three ALDOT employees to travel to his father's house to conduct concrete tests and obtain core samples from a slab recently poured by a private concrete company. (*Id.* at 10). After collecting the samples, Golden instructed an ALDOT employee to have them tested in ALDOT's lab and to tell the lab personnel a lie: that "they were for training purposes." (*Id.*). Later, Golden directed ALDOT employees to return to his father's home (with a state vehicle and equipment in tow) to patch the slab from where the samples had been removed. (*Id.*). After obtaining the test results, Golden complained to the private concrete company that poured the slab about deficiencies in the concrete slab based on the test results. (*Id.*). As a result of Golden's complaint, the concrete company treated his father's slab with an epoxy coat at no additional cost. (*Id.* at 10-11).

Golden had also used an ALDOT gas-powered post hole digger and an ALDOT pressure washer at his house for personal use and permitted other ALDOT employees to make similar unauthorized use of ALDOT property. (*Id.* at 11). The State of Alabama Ethics Commission found that Golden had committed two violations of the Alabama Ethics Law, but he was not terminated.[11] (Doc. # 74-4 at 23).

The court has already determined that, under current Eleventh Circuit precedent[12] such as *McCann* and *Wilson*, Plaintiff's and Golden's misconduct were not "nearly identical." However, it is a separate question whether this evidence raises an inference of discrimination under a mosaic theory. As the Eleventh Circuit has explained, "establishing the elements of the *McDonnell Douglas* framework is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). Rather, a "plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Id.* Here, Plaintiff has offered evidence that, "viewed in a light most favorable to the plaintiff, presents 'a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.'" *Id.* (quoting *Silverman v. Bd. of Educ. of City of Chicago*, 637 F.3d 729, 734 (7th Cir. 2011), overruled by *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016)). That convincing mosaic includes evidence that Plaintiff received satisfactory performance

---

[11] Interestingly, Golden was involved in the investigation into matters leading to Plaintiff's termination.

[12] The Eleventh Circuit recently granted rehearing en banc in a Title VII discrimination case to determine whether a Title VII comparator must be "nearly identical" to the plaintiff or whether some other standard of similarity will suffice to establish a prima facie case of discrimination. *See Lewis v. City of Union City*, 877 F.3d 1000 (11th Cir. 2017), reh'g en banc granted, opinion vacated sub nom. *Lewis v. City of Union City, Georgia*, 893 F.3d 1352 (11th Cir. 2018); Memorandum to Counsel or Parties at 1, *Lewis v. City of Union City, Georgia*, No. 15-11362-U (11th Cir. July 11, 2018), http://www.ca11.uscourts.gov/sites/default/files/enbanc_cases/15-11362%20en%20banc%20briefing%20issues.pdf.

reviews in the four years preceding his termination; that Plaintiff's division was understaffed and that the practice of permitting other employees to enter concrete testing data under a supervisor's name was well-accepted, preceded Plaintiff, and (indeed) was authorized by his superiors; that the GPS records from which Defendant concluded Plaintiff was failing to perform his job were unreliable; and that Defendant treated a white employee who engaged in intentional misconduct, which a jury could conclude is more serious than Plaintiff's, more leniently than it did Plaintiff. Though Plaintiff's and Golden's misconduct may not be "nearly identical" for purposes of *McDonnel Douglas* comparator evidence, Defendant's disparate treatment of them, in combination with the other Rule 56 evidence in this case, creates sufficient circumstantial evidence from which a jury might reasonably infer intentional race discrimination. For these reasons, Defendant is not entitled to summary judgment on Plaintiff's race discrimination claim.

### B.      Plaintiff's Retaliation Claims

The court begins its analysis of Plaintiff's Title VII retaliation claims by addressing whether Plaintiff has exhausted his administrative remedies.  It then turns to the merits of Plaintiff's retaliation claims.

### 1.      Plaintiff Has Sufficiently Exhausted His Administrative Remedies

Defendant claims that Plaintiff failed to exhaust his administrative remedies for his retaliation count because he did not raise a retaliation claim in the September 2012 EEOC charge.  (Doc. # 69 at 25).  Defendant's exhaustion argument requires the court to address a complicated body of case law.  In 1981, the Fifth Circuit held "that it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge; the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court."  *Gupta v. E. Tex. State Univ.*, 654

F.2d 411, 413-14 (5th Cir. Unit A Aug. 1981).[13]  The plaintiff in *Gupta* raised a retaliatory discharge claim for a discharge that occurred after he had initiated a Title VII suit in federal court.  *Id.* at 413.  But, nothing in *Gupta*'s statement of the holding limited its exhaustion exception to cases where the retaliation occurred after a Title VII case was filed in court.  *Id.* at 413-14.

In 1988, the Eleventh Circuit relied on *Gupta* to conclude that a district court possessed jurisdiction over a plaintiff's motion for injunctive relief to remedy alleged retaliation against the plaintiff.  *Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 168-69 (11th Cir. 1988).  The plaintiff in *Baker* claimed that the defendant engaged in retaliation as a result of the suit filed in federal court.  *Id.* at 168.  The *Baker* opinion reasoned that the district court possessed jurisdiction over the retaliation claim because the retaliation claim "could reasonably be expected to grow out of the original charge of discrimination."  *Id.* at 169.  The undersigned previously has applied *Gupta* and *Baker* to conclude that a plaintiff does not need to administratively exhaust his or her EEOC remedies before filing a retaliation claim growing out of an earlier-filed EEOC charge.  *See Davis-Young v. Protective Life Corp.*, No. 2:12-CV-02851-RDP, 2014 WL 4264845, at *7 (N.D. Ala. Aug. 21, 2014) (distinguishing the retaliation claim in *Gupta* from the retaliation claim presented); *Skotnicki v. Bd. of Trs. of Univ. of Ala.*, No. 2:11-CV-03497-RDP, 2014 WL 3891973, at *13 (N.D. Ala. Aug. 8, 2014) ("When a retaliation claim is based on a retaliatory action taken against the employee *after* the initial EEOC charge is filed, the Eleventh Circuit has concluded that the retaliation claim necessarily grows out of a properly filed employment discrimination charge, and it is not necessary for a plaintiff to file a second charge specifically alleging retaliation."), *aff'd*, 631 F. App'x 896 (11th Cir. 2015); *Burchfield v. Indus.*

---

[13]  In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

*Chems., Inc.*, No. 2:11-CV-2816-RDP, 2012 WL 5872808, at *7 (N.D. Ala. Nov. 16, 2012) (distinguishing the retaliation claim in *Gupta* from the retaliation claim presented).

In an unpublished opinion, the Eleventh Circuit distinguished *Gupta* and *Baker* to hold that the plaintiff failed to exhaust his administrative remedies for a retaliatory termination claim arising from an EEOC charge. *Duble v. Fedex Ground Package Sys., Inc.*, 572 F. App'x 889, 892-93 (11th Cir. 2014). The plaintiff in *Duble* was terminated several months after filing his EEOC charge, but before he filed suit in federal court. *Id.* at 891. The Eleventh Circuit explained that the *Baker* exception to exhaustion "does not apply[ ] when no other properly raised judicial claim exists to which the retaliation claim may attach." *Id.* at 892-93. It then distinguished the *Duble* plaintiff's retaliation claims from those presented in *Gupta* and *Baker* because the termination occurred while Plaintiff's EEOC charge was pending. *Id.* at 893. At least two district courts in the Eleventh Circuit have applied *Duble*'s exhaustion ruling to find that plaintiffs failed to exhaust their administrative remedies for retaliation claims premised on post-charge retaliation. *See Jones v. Heritage-Crystal Clean, LLC*, No. 8:16-cv-623-T-33JSS, 2016 WL 3406514, at *3-4 (M.D. Fla. June 21, 2016); *Robinson v. Koch Foods of Ala.*, No. 2:13-cv-557-WKW, 2014 WL 4472611, at *2 (M.D. Ala. Sept. 11, 2014).

Ultimately, binding precedent forecloses Defendant's argument that Plaintiff must exhaust his administrative remedies for the retaliation claims before proceeding to federal court. Because the retaliation claims allegedly grow out of Plaintiff's September 2012 EEOC charge, and the Title VII race discrimination claim based on Plaintiff's September 2012 charge is properly before the court, the retaliation claim also may proceed in this court. *Baker*, 856 F.2d at 168-69; *Gupta*, 654 F.2d at 413-14. The court recognizes that one panel of the Eleventh Circuit -- in an unpublished opinion -- distinguished retaliation claims based on pre-litigation

retaliation from the post-litigation retaliation presented in *Gupta* and *Baker*. *Duble*, 572 F. App'x at 892-93. But, the prior panel precedent rule and the holdings in *Gupta* and *Baker* appear to encompass all retaliation claims that grow out of an EEOC charge, not merely retaliation claims premised upon conduct that occurred after the federal lawsuit has been filed. The court must rule in accordance with binding precedent, regardless of *Duble*'s logical force.[14] Accordingly, the court proceeds to address the Rule 56 merits of Plaintiff's retaliation claim.

## 2. Plaintiff Has Failed to Present a Triable Retaliation Claim

Title VII's anti-retaliation provision provides that:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in a statutorily protected expression; (2) he suffered an adverse employment action; and (3) there is some causal relationship between the two events. *Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir. 1997), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

With respect to the third element, Plaintiff must prove his retaliation claims "according to traditional principles of but-for causation." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). On summary judgment, this requires evidence from which a reasonable juror could conclude that Plaintiff's "protected activity was a but-for cause of the alleged adverse action by the employer" *Id.* at 362.

---

[14] Defendant argues that Plaintiff impermissibly amended his retaliation claim in his motion to dismiss brief. (Doc. # 69 at 26-27). The court disagrees. The Third Amended Complaint clearly identifies the alleged post-employment retaliation by ALDOT and alleges that the retaliation occurred because of his EEOC charge. (Doc. # 32 at ¶¶ 49-52, 79).

Plaintiff's Third Amended Complaint claims that Defendant retaliated against him by revoking his concrete certification and by directing Serco to terminate him. (*See* Doc. # 32 at ¶¶ 49-52). Again, the court's analysis is cabined by the Eleventh Circuit's Title VII case law. The key question here is whether the decisionmaker knew of Plaintiff's protected conduct. If the decisionmaker did not know of a plaintiff's protected conduct when he initiated the adverse employment action, that plaintiff simply cannot show any causal connection between the protected activity and the adverse employment action, let alone but-for causation. *See Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1354 (11th Cir. 1999).

With regard to revocation of his concrete certification, the only potential decisionmakers identified in the Rule 56 record are Golden and Cox. (*See* Doc. # 82-6 at 8) (identifying Golden as the chairman of the concrete technician working task force and Cox as the chairman of the concrete technician certification board, but not identifying the other members of the task force or the certification board). Plaintiff has not argued that Golden or Cox knew of his EEOC charge when ALDOT permanently revoked his concrete certification, nor has Plaintiff offered proof that Golden or Cox knew of the EEOC charge. (*See* Doc. # 82 at 24-25). Because Plaintiff has failed to show that Golden or Cox knew of his EEOC charge when they participated in revoking Plaintiff's concrete certification, Defendant ALDOT is due to be granted summary judgment on this retaliation claim because Plaintiff cannot show that his EEOC charge was the but-for cause of the revocation of his concrete certification. *See Nassar*, 570 U.S. at 362.

Similarly, Plaintiff's retaliation claim regarding his termination from Serco fails as a matter of law because he has not identified the relevant decisionmaker or shown that the Serco decisionmaker knew of his EEOC charge. Plaintiff does not discuss which ALDOT employee(s) communicated with Serco or Gresham Smith in his opposition brief. (*See* Doc. # 82 at 24-25).

He also does not discuss whether the employee responsible for communicating with Serco knew of Plaintiff's EEOC charge or any other protected activity Plaintiff conducted during the EEOC process. (*See id.*). Defendant explains that Mahaffey communicated to Gresham Smith that Plaintiff could not work on ALDOT projects. (Doc. # 74-17 at 9, 11). There is nothing in the Rule 56 record indicating Mahaffey knew about Plaintiff's EEOC charge. (*See generally* Doc. # 74-17). Plaintiff argues that ALDOT's "inability to rehire" designation is a pretext for retaliation because no other employees who falsified records received such a designation. (Doc. # 82 at 24-25). This argument fails to support his retaliation claim, however, because Davis recommended the reemployment designation in June 2012, months before Plaintiff filed his EEOC charge in September 2012. (Doc. # 73-20 at 7). Because there is no evidence that Mahaffey -- or any other ALDOT employee who communicated with Serco or Gresham Smith -- knew of Plaintiff's protected conduct, Plaintiff cannot show that the EEOC charge was the but-for cause of his termination from Serco. *See Nassar*, 570 U.S. at 362. Accordingly, Defendant is due to be granted summary judgment on all of Plaintiff's retaliation claims.

## IV.     Conclusion

For the reasons explained above, Defendant's Motion for Summary Judgment (Doc. # 68) is due to be granted in part and denied in part. An Order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this September 18, 2018.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE