FILED

2020 Aug-13  PM 02:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| BENJAMIN MERCER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:16-cv-1204-RDP |
| | ) | |
| ALABAMA DEPARTMENT | ) | |
| OF TRANSPORTATION, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This case was referred to the Magistrate Judge to report and recommend on matters related to Plaintiff's Motion for Declaratory and Injunctive Relief and Attorney's Fees and Costs. Docs. 143 & 168.  The court instructed the Magistrate Judge to address "the motion in light of the Eleventh Circuit's decision in *Canup v. Chipman-Union, Inc.*, 123 F.3d 1440 (11th Cir. 1997), and 42 U.S.C. § 2000e-5(g)(2)(B)," and to "analyze the number of hours reasonably expended by Plaintiff's counsel in prosecuting the Title VII race discrimination claim in this case." Doc. 168.  For the following reasons, the Magistrate Judge recommends that the motion be denied.  If the district court rejects that recommendation in whole or in part, the Magistrate Judge alternatively recommends that the motion be granted in part, as explained below.

# I.  BACKGROUND

In his third amended complaint, Plaintiff Benjamin Mercer alleged that Defendant Alabama Department of Transportation ("ALDOT") discriminated against him in his termination and retaliated against him. Doc. 32.  The court granted summary judgment to ALDOT on the retaliation claim, but the discrimination claim survived. Doc. 85.  After a four-day trial, the jury found that Mercer had proven that his race was a motivating factor prompting ALDOT to discharge him from his employment, but that ALDOT had proven that it would have discharged him for race-neutral reasons even if it had not taken his race into account. Doc. 133.

Following the trial, Mercer filed a Motion for Declaratory and Injunctive Relief and Attorney's Fees and Costs. Doc. 143.  Specifically, Mercer requested the court to (1) issue declaratory relief, (2) issue an injunction against ALDOT restoring his concrete certification license, and (3) award him attorney's fees and costs. Docs. 143 & 143-1.  The parties exhaustively briefed the issues presented in the motion (Docs. 142, 143-2, 151, 154, 170, 173, 180, 181, 183–87, 193 & 194), and on July 8, 2020 the Magistrate Judge held a lengthy hearing on the motion, which is now under submission.

# II.  DISCUSSION

Mercer contends that Title VII entitles him to declaratory relief, injunctive

relief, and attorney's fees and costs because the jury found that his race was a motivating factor in ALDOT's decision to terminate him. More specifically, as stated in his third amended complaint, Mercer asks the court to declare "that race played a role in the decision of [ALDOT] to terminate his employment." Doc. 32 at 1. He also seeks a "permanent injunction restraining ALDOT from failing to reinstate his license as a Concrete Technician." Doc. 143-2 at 5. Finally, he seeks an award of attorney's fees and costs.

Before addressing the merits of the requests, the court takes up ALDOT's contention that Mercer's requests for declaratory and injunctive relief are barred by the pretrial order's omission of the requested relief. Docs. 142 at 2 & 151 at 26. The absence of a specific request for injunctive or declaratory relief in a pretrial order is not a waiver of the entitlement to that relief after trial. *Cooper v. Ambassador Personnel, Inc.*, 570 F. Supp. 2d 1355, 1358 (M.D. Ala. 2008). Mercer requested both declaratory and injunctive relief in his third amended complaint. Doc. 32. And while the precise injunctive relief now at issue was not explicitly alleged in the third amended complaint, Federal Rule of Civil Procedure 54(c) mandates that all judgments, save for those rendered in default, should "grant the relief to which a party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." *See also Carter v. Diamondback Golf Club*, Inc., 222

3

F. App'x 929, 931 (11th Cir. 2007) ("Rule 54 requires the district court to grant the relief to which each plaintiff is entitled, even if that relief is not requested in the complaint."). Having resolved this preliminary matter, the court turns to the merits of Mercer's motion.

Title VII provides that "[i]t shall be an unlawful employment practice for an employer . . . to discharge . . . any individual . . . because of such individual's race." 42 U.S.C.A. § 2000e-2(a). Under the 1991 amendments to Title VII, "an unlawful employment practice is established when the complaining party demonstrates that race . . . was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C.A. § 2000e-2(m). An employer, however, can limit its liability if it establishes that it "would have taken the same action in the absence of the impermissible motivating factor." 42 U.S.C.A. § 2000e-5(g)(2)(B). That is exactly what the jury found in this case. Specifically, the jury found that Mercer proved that his race was a motivating factor in ALDOT's decision to discharge him, but that ALDOT proved that it would have discharged him for race-neutral reasons even if it had not considered his race. Doc. 133.

In this posture, the court has the discretion to "(i) . . . grant declaratory relief, injunctive relief . . . , and attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a claim under section 2000e-2(m)" but it "(ii) shall

not award damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment."  Additionally, the Eleventh Circuit has found an award of fees to be "appropriate when declaratory or injunctive relief is awarded or where intentional discrimination is so blatant and egregious that failure to award attorney's fees to Plaintiff would constitute an injustice." *Canup*, 123 F.3d at 1444 (internal quotation marks omitted).

Under 42 U.S.C. § 1988, "[i]n any action or proceeding to enforce a provision of . . . Title VII of the Civil Rights Act of 1964 . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."  To be entitled to an award of attorney's fees, one must qualify as a prevailing party. And "to qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim.  The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought[] or comparable relief through a consent decree or settlement." *Farrar v. Hobby*, 506 U.S. 103, 111 (1992) (citations omitted).  Essentially, "[i]f the plaintiff has succeeded on 'any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit,' the plaintiff has crossed the threshold to a fee award of some kind." *Tx. St. Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791–92 (1989) (citation omitted). The decision whether to award any fees under § 2000e-5(g)(2)(B) is "plainly a

discretionary one." *Sheppard v. Riverview Nursing Center, Inc.*, 88 F.3d 1332, 1335 (4th Cir. 1996); *Canup*, 123 F.3d at 1442 (noting that § 2000e-5(g)(2)(B) "uses permissive language ('may grant') when discussing attorney fees").

With this legal background in mind, the court first must address whether Mercer is entitled to declaratory or injunctive relief. If so, the court then would determine the reasonable attorney's fees and costs. If not, however, the inquiry does not end. Instead, as noted above, the Eleventh Circuit instructs that—even where a declaratory judgment and injunction are inappropriate—a plaintiff still may recover a reasonable attorney's fee and costs when the defendant's intentional discrimination was blatant and egregious. If so, the issue again becomes the reasonableness of the fees and costs sought. If the court rejects the plaintiff's request for declaratory and injunctive relief and also finds that the discrimination is not blatant or egregious, no award is recoverable. *Canup*, 123 F.3d at 1444–45.

## A.    Declaratory and Injunctive Relief

The Declaratory Judgment Act permits a district court to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a); *Eisenberg v. Standard Ins. Co.*, 2009 WL 3667086, at *2 (S.D. Fla. Oct. 26, 2009). However, as noted above, with respect to a request for declaratory relief in mixed-motive Title VII

6

cases, 42 U.S.C. §§ 2000e-5(g)(2)(B) limits the relief available: the declaratory relief must "be directly attributable only to the pursuit of a mixed motive claim." *Carter*, 222 F. App'x at 932 (internal quotation marks omitted).

A declaratory judgment requires "the settling of some dispute which affects the behavior of the defendant towards the plaintiff." *Rhodes v. Stewart*, 488 U.S. 1, 3–4 (1988); *see also Hewitt v. Helms*, 482 U.S. 755, 761 (1987). If not for the settling of a dispute, any declaratory judgment would be an improper advisory opinion. *Rhodes*, 488 U.S. at 3–4. Therefore, a declaratory judgment is not appropriate if it will not result in action on the part of the defendant. *Cooper*, 570 F. Supp. 2d at 1360 (finding declaratory relief inappropriate "[b]ecause [the plaintiff] no longer works for [the defendant], the declaration [the plaintiff] seeks would not clarify the parties' legal relationship").

Here, Mercer "seeks a declaratory judgment that race played a role in the decision of [ALDOT] to terminate his employment." Doc. 32 at 1. In his brief in support of his motion, Mercer phrases the requested declaration as asking the court to "declare that Defendant ALDOT violated Title VII in its discharge of Plaintiff." Doc. 143-2 at 24. Neither formulation is appropriate. Any judicial pronouncement that ALDOT violated Title VII when it terminated Mercer would not affect ALDOT's behavior or clarify the relationship between ALDOT and Mercer because

7

Mercer is no longer employed by ALDOT. *Canup*, 123 F.3d at 1443; *Cooper*, 570 F. Supp. 2d at 1360.  For this reason, the Magistrate Judge does not recommend the entry of a declaratory judgment.

The outcome is the same for Mercer's request for injunctive relief. Approximately six months after his termination, ALDOT's Concrete Technician Working Task Force recommended the "permanent revocation" of Mercer's "ALDOT Concrete Technician Certification" based on the falsification of records underlying his termination (Doc. 82-6 at 8), and the Concrete Technician Certification Board accepted the recommendation.  Because Mercer is not permitted to work on any ALDOT projects without this certification, he asks the court to "enjoin ALDOT from failing to restore Plaintiff's concrete technician certification." Doc. 143-2.

While few courts have addressed this issue, those sitting within the Eleventh Circuit generally have refused to grant injunctive relief when a plaintiff is no longer employed by the defendant. *See, e.g., Wallace v. Dunn Constr. Co.*, Inc., 62 F.3d 374, 380 (11th Cir. 1995) (finding that injunctive relief was not appropriate because plaintiff was no longer employed by defendant); *Cooper*, 570 F. Supp. 2d at 1359–60 (finding that, in a case under 29 U.S.C. § 2(d)(1), injunctive relief was inappropriate because plaintiff was no longer employed by the defendant);

*McCaskill v. ConAgra Foods, Inc.*, 296 F. Supp. 2d 1311, 1321 (M.D. Ala. 2003) (finding that injunctive relief is "unavailable as a remedy" for a Title VII violation when the plaintiff is no longer employed by the defendant). These decisions recognize the practical reality that an injunction would not affect the relationship between the parties because there is no meaningful relationship after the plaintiff's employment ends. *Hewitt v. Helms*, 482 U.S. 755, 761 (1987) (discussing the distinction between an actual case or controversy and an advisory opinion—the "settling of some dispute which affects the behavior of the defendant towards the plaintiff").

The situation here is a bit different factually, but not in a way that changes the outcome of Mercer's motion. Mercer is no longer an employee of ALDOT, and the jury has affirmed his termination as an appropriate action even considering only race-neutral reasons. Without an employment relationship, most injunctive relief would not impact the parties' behavior. But Mercer contends that (1) he will be deprived of the ability to work on future ALDOT projects because he does not have the appropriate ALDOT certification, and (2) that the requested injunction will allow him to work on those projects. Mercer is correct that the requested injunction would give him the ability to apply for work on ALDOT projects, assuming he can

otherwise meet the requirements for certification.[1]   But the injunction falls short of meaningful relief because it would not mandate that ALDOT actually hire Mercer as a concrete technician on any future project.  Such a toothless injunction would not affect the relationship between the parties in any legally significant way.   The Magistrate Judge, therefore, recommends the denial of the request for an injunction.

## B.    Egregiousness of the Discrimination

As discussed above, the Eleventh Circuit has opined that an award of attorney's fees and costs could be appropriate where the "discrimination is so blatant or egregious that the failure to award fees would constitute an injustice." *Canup*, 123 F.3d at 1444.  In this analysis, the Eleventh Circuit instructed courts to consider whether there is evidence of "widespread or intolerable animus on the part of the defendant" or evidence of unacceptable conduct on the part of plaintiff. *Id*. (quoting *Sheppard*, 88 F.3d at 1338).  For example, "an 'innocent' employee whose conduct played no role in his termination . . . stands in a different situation than one who engages in misconduct. . . . [M]isconduct manifests itself with varying degrees, so the severity of the defendant's wrongdoing can be considered in determining whether the defendant should be obligated to pay the plaintiff's attorney fees." *Id*.

---

[1] ALDOT has stressed that there are multiple prerequisites to the certification, including a certification from another licensing body and the payment of a fee.  ALDOT has not presented any evidence that Mercer would be unable to meet these prerequisites.

Mercer points to seven facts[2] as evidence of the egregiousness of ALDOT's conduct. Doc. 183 at 3–6.  Of this evidence, four facts are directly related to Mercer, his employment, or his termination.  Mercer first highlights his comparator evidence. Specifically, he contends that ALDOT fired him for falsification of plant inspection documents while only suspending Shannon Golden, a white supervisor, for 30 days for "falsif[ying] ALDOT records [and] misappropriate[ing] to his own personal use more than $1,200 of ALDOT's property and manpower." Doc. 183 at 3.  Second, Mercer contends that it was egregious to permanently revoke his Concrete Technician license and "preclud[e] him from working in the concrete industry in Alabama."[3] Doc. 183 at 3.  He maintains that Golden's license was not revoked or suspended for the same offense, the falsification of records. Doc. 183 at 3 n.4.  Third, Mercer points to evidence that ALDOT "excluded Plaintiff's direct supervisor, who is also black, from any involvement in its investigation of Plaintiff, and into the decision to discharge him" since she worked closely with him throughout his employment with ALDOT. Doc. 183 at 4.  Fourth, Mercer argues that ALDOT's improper staffing of the concrete lab, which caused problems that ALDOT blamed

---

[2] While Mercer's briefing highlights nine facts, the court considers only the evidence in the record that was presented to the jury.  Mercer has conceded that the court may not look outside the trial record in evaluating the egregiousness of ALDOT's conduct. Doc. 183 at 1.

[3] This contention is an overstatement.  Instead, as explained previously, the revocation prevents Mercer from working only on ALDOT projects.  Neither party presented any evidence that the ALDOT certification revocation prevents employment on all projects located in Alabama.

on Mercer and his supervisor, is evidence of the egregiousness of ALDOT's discrimination. Doc. 183 at 5.

The remaining three facts highlighted by Mercer as evidence of the egregiousness of ALDOT's conduct are alleged examples of discrimination unrelated to Mercer. This evidence includes (1) ALDOT's rejection "of a black supervisor's disciplinary recommendations concerning an insubordinate and disrespectful white employee"; (2) ALDOT's rejection of a black supervisor's disciplinary recommendation "for a very intoxicated white worker, while accepting the supervisor's recommendation that an intoxicated black worker be suspended for two days"; and (3) ALDOT Division Engineer Brian Davis' decision to permit all four of his white assistants—but not his only black assistant—to serve as Acting Division Engineer when he was away from the office. Doc. 183 at 4–5.

The court balances Mercer's evidence of egregiousness against his culpability in his own termination. The jury found that ALDOT established that it would have discharged Mercer for race-neutral reasons even if it had not taken his race into account. This is because ALDOT presented evidence that Mercer falsified numerous state documents, including concrete plant inspection forms and concrete strength testing data. Indeed, Mercer admitted to the jury that he falsified the dates on certain

records relating to concrete strength testing and plant inspections.[4]   ALDOT also presented evidence that Mercer failed to perform his job properly and failed to comply with ALDOT policies on testing. *See* Doc. 153 at 8–9.

On this record, it is evident that there was wrongdoing on both sides.  Mercer cannot be considered an "innocent employee" in the sense that term is used in *Canup*, but ALDOT is not without fault.  The jury found that "race was a motivating factor that prompted ALDOT [to] discharge" Mercer. Doc. 133.  However, looking at the alleged egregiousness of ALDOT's conduct, the court cannot conclude that Mercer has presented evidence of "a widespread or intolerable animus on the part of a defendant." *Canup*, 123 F.3d at 1444 (citation omitted).   While there may be circumstantial evidence of race discrimination, there is no evidence in the record of "a company-wide policy that violates Title VII contributed to a plaintiff's termination," *Canup*, 123 F.3d at 1443 n.5; that ALDOT engaged in a pattern of race discrimination; or that it harbored any spite, malevolence, or racial animus generally. And Mercer's evidence of a few instances of sporadic conduct, most of which are presented with little factual support or context, does not show a workplace permeated by racial hostility or animus. *See Cooper*, 570 F. Supp. 2d at 1360

---

[4] ALDOT represented at the hearing that Mercer denied the falsification of these documents throughout the litigation, but admitted to his actions only when he was on the stand in front of the jury.  Mercer did not dispute this representation.

(finding "no evidence [in a mixed motive case] . . . that would support a finding of such broad or persistent discrimination or something comparable to it").  Because of the culpability of both parties and the lack of evidence of widespread racial animus, the court concludes that ALDOT's conduct was not so egregious that the failure to award attorney's fees would constitute an injustice.

For these reasons, the court recommends that declaratory and injunctive relief are inappropriate and finds that the intentional discrimination was not blatant and egregious.  As a result, there is no legal basis for awarding attorney's fees and costs that has been recognized within the Eleventh Circuit.  Accordingly, the Magistrate Judge recommends that Mercer bear his own attorney's fees and costs.

## C.    Attorney's Fee Award

If the court were to award declaratory or injunctive relief or find that ALDOT's discrimination has been blatant and egregious, the court next would address the reasonable attorney's fees and costs accruing to Mercer.  Accordingly, the Magistrate Judge makes the following alternative recommendations as to the propriety of the requested attorney's fees and costs.

The leading United States Supreme Court case on the proper standard for setting a fee award where a plaintiff has achieved only limited success is *Hensley v. Eckerhart*, 461 U.S. 424, 431 (1983).  The *Hensley* court held that the "most useful

starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id*. at 433. "The product of these two figures is the lodestar and there is a 'strong presumption' that the lodestar is the reasonable sum the [prevailing] attorneys deserve." *Bivins v. Wrap It Up, Inc*., 548 F.3d 1348, 1350 (11th Cir. 2008).

"The product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the results obtained." *Hensley*, 461 U.S. at 434 (citation omitted). "[W]here the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Id*. at 440; *see also Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988).

In his motion, Mercer originally sought compensation for 534.50 hours of work by attorney U.W. Clemon, 50.3 hours of work by attorney Rodrick Barge, and 43 hours of work by paralegal Stephanie Randall for a total of $285,565.00 in fees.[5] Doc. 143-1 at 9. Mercer later agreed to "discount his fee by 10%" "in the exercise of billing judgment." Doc. 143-1 at 9. Therefore, Mercer now seeks attorney's fees

---

[5] Mercer also sought reimbursement for $7,963.47 in expenses. Doc. 143-1 at 9. The court addresses the expenses separately below.

in the amount of $258,840.00. Doc. 143-1 at 9.

### 1.   *Reasonable Hourly Rate*

For purposes of calculating the lodestar, "[a] reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299.  The "applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates," a responsibility that requires "more than the affidavit of the attorney performing the work." *Id*. (citing *Blum*, 465 U.S. at 896 n.11).  "[S]atisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits." *Norman*, 836 F.2d at 1299. Evidence of reasonable rates can be presented through direct evidence of rates charged by lawyers under similar circumstances or by opinion evidence. *Id*. Additionally, because the court is "itself an expert on the question[, it] may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Id*. at 1303 (quotation omitted).

Mercer requests the following rates for his attorneys: $500 per hour for

Clemon, $250[6] per hour for Barge in his duties as an attorney, and $75 per hour for Barge in his duties as a paralegal.[7] Doc. 143-1 at 2.  ALDOT challenges the reasonableness of the $500 hourly rate for Clemon and the $250 hourly rate for Barge. Doc. 151 at 10–13.  ALDOT does not challenge the reasonableness of the $75 hourly rate for Barge's paralegal time entries.

ALDOT relies on a declaration from Arnold W. Umbach III, an employment defense lawyer with 28 years of experience, to support its argument that the requested rates are unreasonably high. Docs. 151 at 10–13 & 151-1.  Umbach states that "the prevailing market rate for discrimination or similar employment litigation in 2017 ranged from about $175 to $425, with the lower amount representing an attorney with little experience or skill in this area and the higher amount representing rates commanded by top tier, preeminent attorneys in this field." Doc. 151-1 at 3. Umbach further states that "very seasoned employment attorneys in this market in 2017 frequently were only able to charge between $300 and $400 an hour." Doc. 151-1 at 3.  When asked at the hearing to identify appropriate rates for Mercer's attorneys, ALDOT suggested $425 to $450 per hour for Clemon and $175 per hour

---

[6] Mercer initially requested $300 per hour for Barge but agreed to reduce his requested rate to $250. Doc. 180 at 3.

[7] Mercer later withdrew his application for fees as it relates to paralegal Stephanie Randall's time. Doc. 194 at 7.

for Barge.

In response to Umbach's declaration and in support of Clemon's hourly rate, Mercer submitted the declaration of Jon C. Golfarb, an employment plaintiff's attorney with 28 years of experience. Docs. 180 at 3 & 180-1. Golfarb states that the claimed $500 hourly rate is "highly reasonable in light of [Clemon's] extensive experience of over fifty (50) years." Doc. 180-1 at 4. Golfarb further declares that "[s]ince 2014, the prevailing market rate in Alabama for plaintiff's attorney[s] in cases such as the current case ranges from $200 to $625 per hour." Doc. 180-1 at 5.

Golfarb also identified a number of fee awards in the Northern District of Alabama authorizing rates in excess of those identified by Umbach. For example, in *Cedric Burroughs v. Honda Manufacturing of Alabama*, Case No. 1:12-cv-2500-VEH (N.D. Ala. Feb. 7, 2014), Judge Virginia Hopkins approved a rate of $625 per hour for Robert Wiggins, who had 38 years of experience; $525 per hour for Candis McGowan, who had 25 years of experience; and $525 per hour for Ann Wiggins, who had 25 years of experience. Golfarb states that he has been awarded fees in the Northern District of Alabama at a rate of $450 per hour on multiple occasions. Doc. 180-1 at 8 (citing *Henderson v. Mid-South Elec., Inc.*, 2016 U.S. Dist. LEXIS 132153 (N. D. Ala. Sept. 27, 2016) (Bowdre, J.); *Jefferson v. Baptist Health Sys.*, 2017 U.S. Dist. LEXIS 44964 (N.D. Ala. March 28, 2017) (Bowdre, J.); *Whitford v.*

*Sub-Line Assoc.*, 2017 U.S. Dist. LEXIS 134902 (N.D. Ala. Aug. 23, 2017) (Bowdre, J.); *Virciglio v. Worktrain*, 2:12-cv-3738-AKK (Aug. 14, 2018) (Kallon, J.)). Additionally, in Mercer's supplemental response to ALDOT's opposition to the motion, Mercer highlighted a recent fee award of $500 per hour for Clemon by Judge Madeline Haikala in *Stout v. Jefferson County and Gardendale Boards of Education*, 2019 WL 7811389, at *26 (Dec. 23, 2019). These higher hourly rates are best understood in the context of the contingent nature of plaintiffs' litigation. After all, contingent work "often contains greater risk for the attorney because his or her fees normally hinge upon the outcome of the suit . . . . [Thus] [a] plaintiff's attorney, who takes on greater risk in litigating a case, could reasonably charge a higher rate." *Evans v. Books-A-Million*, 907 F. Supp. 2d 1284, 1304 (N.D. Ala. 2012), *vacated in part on other grounds*, 762 F.3d 1288 (11th Cir. 2014).

Goldfarb's declaration does not address Barge's requested rate, but Clemon's declaration states that

> Rodrick Barge, a 2001 graduate of Alabama State University, received his J.D. degree from Cumberland School of Law in 2005. He was admitted to the Alabama Bar in 2005; and to the Georgia Bar in 2015. He worked at various law firms in Selma, Bessemer, and Birmingham between 2005–2018. He became associated with the law firm of U.W. Clemon, LLC, in 2018.

Doc. 143-1 at 6. ALDOT contends that Clemon's declaration does not provide satisfactory evidence of Barge's reasonable rate because it does not address the

19

actual fees Barge has charged and received for work in similar cases, and alleges that this case was the first time Barge had ever worked on an employment discrimination in federal court. Doc. 151 at 11.

Based on the record evidence and the court's experience concerning reasonable and proper fees, the court concludes that both requested rates are reasonable. Clemon's rate is one that he recently has been awarded for similar litigation in this district, and although it may be at the high end of the spectrum even for contingent employment cases, it is not unreasonable in light of his vast experience both as a practicing lawyer and federal judge. Barge's requested rate also is reasonable. He has been practicing law for 13 years and his requested rate of $250 falls at the low end of the range for litigation of this type and complexity, even according to the guidelines set out in Umbach's declaration. The court therefore recommends a finding that Clemon's reasonable hourly rate is $500 and Barge's reasonable hourly rate is $250.

### 2. *Hours Reasonably Expended*

The next step in the computation of the lodestar is to ascertain the hours reasonably expended on the litigation. *Norman*, 836 F.2d at 1301. Courts must exclude "excessive, redundant, or otherwise unnecessary" hours from the initial fee calculation, *Hensley*, 461 U.S. at 434, while fee applicants must use billing judgment

such "that a lawyer [will] not be compensated for hours spent on activities for which he would not bill a client of means who was seriously intent on vindicating similar rights." *Norman*, 836 F.2d at 1301.  If the number of hours claimed "is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." *Bivins*, 548 F.3d at 1350.

Here, the parties conducted an hour-by-hour analysis of the claimed hours. The motion included a sealed exhibit documenting 534.5 hours of work performed by Clemon and 50.3 hours of work performed by Barge. Doc. 148.  Throughout the briefing, as well as during the hearing, Mercer has offered to reduce certain of his requested time entries and categories of entries for various reasons.  Specifically, Mercer has withdrawn or reduced the following entries:

| Entry Date | Hours and Billing Attorney | Adjustment | Document and Page Number[8] |
|---|---|---|---|
| 12/17/16 | 1.8 UWC | Reduced to 1.0 hours | Doc. 194 at 2 |
| 12/18/16 | 0.7 UWC | Reduced to 0.5 hours | Doc. 194 at 2 |
| 12/18/16 | 0.4 UWC | Reduced to 0.1 hours | Doc. 194 at 2 |
| 03/28/17 | 2.6 UWC | Withdrawn | Doc. 180 at 11 |
| 11/20/17 | 0.5 RJB | Withdrawn | Doc. 180 at 11 |
| 09/30/19 | 0.8 RJB | Withdrawn | Doc. 180 at 10 |
| 02/07/18 | 1.3 UWC | Withdrawn | Doc. 194 at 4 |
| 02/07/18 | 2.1 UWC | Withdrawn | Doc. 194 at 4 |
| 04/30/18 | 4.0 RJB | Bill at Paralegal Rate | Doc. 180 at 9 |
| 05/02/18 | 4.0 RJB | Bill at Paralegal Rate | Doc. 180 at 9 |

[8] The citations in this column point to the record support for Mercer's voluntary withdrawal or reduction of the corresponding entries.

| 05/04/18 | 4.0 RJB  | Bill at Paralegal Rate | Doc. 180 at 9[9]  |
| 06/10/18 | 9.3 UWC  | Withdrawn              | Hearing           |
| 06/11/18 | 2.6 UWC  | Withdrawn              | Doc. 194 at 5     |
| 09/30/19 | 0.9 UWC  | Withdrawn              | Doc. 194 at 6–7   |
| 10/04/19 | 2.8 RJB  | Withdrawn              | Doc. 194 at 7     |
| 10/08/19 | 3.2 UWC  | Withdrawn              | Doc. 194 at 7     |

Because of these voluntary adjustments, the court subtracts 23.3 hours from those claimed by Clemon and 4.1 hours from those claimed by Barge. The court applies the undisputed rate of $75 per hour to Barge's 12 hours for paralegal work performed on April 30, 2018; May 2, 2018; and May 4, 2018. Additionally, there are a number of entries to which ALDOT does not assert any objection. *See* Doc. 187 at 8–16 & 21–27. The court incorporates all undisputed hours into its lodestar calculation.

Turning to ALDOT's objections, the time entries in question essentially fall into five groups. The first set of objections centers on ALDOT's claim that certain entries should be reduced to account for the failed retaliation claim. Doc. 187 at 7–21. This category represents the vast majority of ALDOT's objections to the time entries before September 18, 2018, the date of the court's opinion denying summary judgment on the discrimination claim and granting summary judgment on the

---

[9] Mercer first agreed to bill Barge's entry for "uploading documents to Clio" at the paralegal rate, but he later withdrew his request to be compensated for that time entry. *Compare* Doc. 180 at 9, *with* Doc. 180 at 11.

retaliation claim. Doc. 187 at 7–21.  Instead of attempting to divine the precise portion of each entry attributable to tasks furthering only the failed claim, as ALDOT urges, the court finds that the appropriate adjustment for the degree of Mercer's success is a percentage-based reduction to the lodestar after its initial calculation. *Duckworth v. Whisenant*, 97 F.3d 1393, 1399 (11th Cir. 1996) (citing *Hensley*, 461 U.S. at 434, and *Norman*, 836 F.2d at 1302).  Therefore, the court does not address these objections in calculating the lodestar.  The chart below does, however, reflect entries where this objection is paired with another objection.

The second grouping is an objection to travel time.  Mercer requests to be reimbursed at his attorneys' regular rate for their travel time, and Clemon represented at the hearing that he routinely charges his clients at his full rate for his travel time. Docs. 148 & 180.  ALDOT maintains that Clemon's travel time should be reduced to half the regular rate. Doc. 151 at 17–18.  Neither party submitted any evidence to support their respective positions.  While Clemon may be able to charge some clients his full rate for travel, in the court's knowledge and experience, many clients have demanded drastic reductions in travel rates during the last decade, with some balking at the idea of compensating their attorneys for any travel time at all. For this reason, the court recommends that Clemon receive half of his normal hourly rate for his travel time.  These reductions will be shown in the chart below.

A third group of objections revolve around trial preparation.  The billing entries for the two weeks leading up to trial—September 1, 2019 through September 14, 2019—typically describe the day's tasks merely as "trial preparations."  ALDOT contends that these entries do not provide enough specificity for an evaluation of the reasonableness of the time spent in as much as they do not describe with particularity the acts or tasks performed each day. Doc. 187 at 23–25.  Additionally, ALDOT argues that the total time is excessive for a four-day trial. Doc. 187 at 23–25.  While the court may have preferred to have more information about the specific "trial preparations" counsel performed each day, under the circumstances the court does not necessarily require this level of detail in order to evaluate the reasonableness of the time.  Preparation for trial is one of the most important and time-consuming areas of a litigator's practice.  The court cannot say with any degree of certainty how long it should take any particular attorney to prepare for trial, nor can it say that the time Clemon spent preparing for this trial appears to have been excessive.  These objections should be overruled.

ALDOT also objects to Barge's time at trial.  Specifically, ALDOT contends that the time is excessive and unreasonable because Barge did not bill any time for trial preparation, did not strike the jury, did not present an opening statement, did not take any live witnesses, and did not make a closing argument. Doc. 187 at

24

25–26. Barge's only participation in the trial, according to ALDOT, was to read deposition questions into the record on September 18, 2019. Doc. 187 at 25–26. Mercer disagrees with this characterization and states that "Plaintiff's main counsel could not have tried this case alone. He regularly conferred with Mr. Barge throughout the trial in interrogating witnesses and presenting evidence." Doc. 194 at 6. Mercer also notes that ALDOT always had two attorneys at counsel table and at least two other attorneys in the gallery at all times during the trial. Doc. 194 at 6. In the court's experience, one-lawyer trials have become exceedingly rare. Mercer's decision to employ a two-lawyer trial team was not unreasonable—particularly where ALDOT's staffing decisions at trial reinforce the necessity for at least a two-lawyer plaintiff's team. On this record, ALDOT has given the court no reason to question the reasonableness of Barge's time related to the trial. These objections are due to be overruled.

Finally, the majority of ALDOT's remaining objections center on the amount of time reported for certain tasks. For example, ALDOT contends that counsel spent excessive amounts of time on researching relevant law and drafting and reviewing certain motions or briefs. Like the objection to the extent of Clemon's trial preparation, these claims of excessiveness have no foundation outside of defense counsel's *ipse dixit*. There is no evidence or caselaw to support the excessiveness

25

of these entries, and the court will not speculate about the amount of time it should have taken counsel to complete various tasks when none of the entries are patently excessive or unreasonable.  These objections also should be overruled.

With that explanation, the Magistrate Judge recommends the following resolution for the remaining objections:

| Entry Date | Hours and Billing Attorney | Objection | Recommendation |
|---|---|---|---|
| 12/17/16 | 1.5 UWC | Lacks specificity | Denied |
| 11/21/17 | 4.0 UWC | Travel time reduced to half of rate | Granted |
| 12/14/17 | 3.0 UWC | Excessive | Denied |
| 12/31/17 | 7.6 UWC | Excessive | Denied |
| 01/01/18 | 2.2 UWC | Excessive | Denied |
| 01/01/18 | 3.0 UWC | Excessive | Denied |
| 01/02/18 | 4.9 UWC | Unclear and lacks specificity | Denied |
| 01/04/18 | 4.0 UWC | Travel time reduced to half of rate | Granted |
| 01/05/18 | 4.0 UWC | Travel time reduced to half of rate | Granted |
| 01/08/18 | 3.0 UWC | Unclear what work performed and if work was duplicative | Denied |
|  | 2.3 UWC | Excessive | Denied |
| 01/18/18 | 0.3 UWC 1.5 UWC 3.0 UWC 0.8 UWC | Excessive | Denied |
| 01/19/18 | 0.6 UWC | Excessive/Unnecessary | Denied |
|  | 1.3 UWC | Description unclear | Denied |
| 01/22/18 | 1.8 UWC | Excessive | Denied |
| 02/06/18 | 0.7 UWC | Unclear and lacks specificity | Denied |
| 02/08/18 | 1.7 RJB | Barge had not yet appeared as counsel | Denied |
| 02/12/18 | 4.2 UWC | Excessive | Denied |

| 02/14/18 | 0.2 UWC | Lacks specificity or explanation of why it was necessary | Denied |
|----------|---------|-----------------------------------------------------------|--------|
| 02/21/18 | 8.2 UWC | Block billing | Denied |
| 02/22/18 | 1.1 UWC | Block billing | Denied |
| 04/30/18 | 4.0 RJB (paralegal rate) | Unnecessary and excessive; Barge had not yet appeared as counsel | Denied |
| 05/02/18 | 4.0 RJB (paralegal rate) | Unnecessary and excessive; Barge had not yet appeared as counsel | Denied |
| 05/04/18 | 4.0 RJB (paralegal rate) | Unnecessary and excessive; Barge had not yet appeared as counsel | Denied |
| 06/04/18 | 2.7 UWC | Block billing | Denied |
| 06/05/18 | 5.0 UWC | Block billing | Denied |
|          | 2.9 UWC | Excessive and unreasonable | Denied |
| 06/06/18 | 8.2 UWC | Block billing | Denied |
| 06/07/18 | 9.2 UWC | Block billing | Denied |
| 06/08/18 | 6.2 UWC | Block billing | Denied |
| 06/09/18 | 6.8 UWC | Block billing | Denied |
| 06/10/18 | 4.8 UWC | Excessive and unreasonable | Denied |
|          | 5.9 UWC | Block billing | Denied |
| 06/11/18 | 8.7 UWC | Block billing | Denied |
| 06/26/18 | 1.9 UWC | Excessive | Denied |
| 07/02/18 | 0.1 UWC | Lacks specificity | Denied |
| 09/18/18 | 3.4 UWC | Excessive | Denied |
| 09/20/18 | 0.5 UWC | Lacks specificity | Denied |
| 06/03/19 | 1.2 UWC | Unclear; lack of specificity | Denied |
| 06/04/19 | 1.5 UWC | No reasonable basis for tasks | Denied |
| 07/08/19 | 2.5 UWC | Unclear | Denied |
| 07/09/19 | 6.2 UWC | Unclear | Denied |
| 08/21/19 | 5.9 UWC | Excessive | Denied |
| 09/01/19 | 4.5 UWC | Lacks specificity and excessive | Denied |
| 09/02/19 | 6.2 UWC | Lacks specificity and excessive | Denied |
| 09/03/19 | 7.9 UWC | Lacks specificity and excessive | Denied |

| 09/04/19 | 7.2 UWC | Lacks specificity and excessive | Denied |
|---|---|---|---|
| 09/05/19 | 6.6 UWC | Lacks specificity and excessive | Denied |
| 09/09/19 | 8.2 UWC | Lacks specificity and excessive | Denied |
| 09/10/19 | 7.8 UWC | Lacks specificity and excessive | Denied |
| 09/11/19 | 8.7 UWC | Lacks specificity and excessive | Denied |
| 09/12/19 | 8.6 UWC | Lacks specificity and excessive | Denied |
| 09/13/19 | 10.2 UWC | Lacks specificity and excessive | Denied |
| 09/14/19 | 12.0 UWC | Lacks specificity and excessive | Denied |
| 09/16/19 | 8.5 RJB | Unreasonable and excessive | Denied |
| 09/17/19 | 8.5 RJB | Unreasonable and excessive | Denied |
| 09/18/19 | 8.5 RJB | Unreasonable and excessive | Denied |
| 09/19/19 | 7.0 RJB | Unreasonable and excessive | Denied |
| 10/08/19–<br>10/14/19 | 4.7 UWC<br>6.7 UWC<br>8.1 UWC<br>8.9 UWC<br>3.8 UWC | Total time excessive | Denied |

Based on the recommendations above and in addition to the hours voluntarily withdrawn by Mercer, the court subtracts 12 hours for Clemon's travel time from the entries compensable at his full rate, and instead applies the reduced rate of $250 per hour to this time.  In addition, Mercer previously agreed to "discount his fee by 10%" "in the exercise of billing judgment." Docs. 143-1 & 180 at 13–14.  Therefore, the court reduces the overall number of requested hours by ten percent in calculating the lodestar.[10]  Considering all deductions, the recommended lodestar calculation

---

[10] This deduction for "billing judgment" is more appropriately conceptualized as a discount to the number of hours than as an adjustment to the lodestar.  The Eleventh Circuit instructs fee applicants to use billing judgment such "that a lawyer [will] not be compensated for hours spent on activities for which he would not bill a client of means who was seriously intent on vindicating similar

follows:

| Attorney | Original Request | Recommended Time | Discounted by 10% | Hourly Rate | Lodestar |
|---|---|---|---|---|---|
| Clemon | 534.50 hours | 499.20 hours[11] | 449.28 hours | $500 | $224,640 |
| Clemon (during travel) | | 12 hours | 10.8 hours | $250 | $2,700 |
| Barge | 50.3 hours | 34.2 hours[12] | 30.78 hours | $250 | $7,695 |
| Barge (as paralegal) | | 12 hours | 10.8 hours | $75 | $810 |
| **TOTAL** | | | | | **$235,845** |

### 3.    *Adjustments to the Lodestar*

The court's initial calculation of the presumptively reasonable lodestar amount "does not end the inquiry." *Hensley*, 461 U.S. at 434. "After determining the lodestar amount . . . the court is entitled to adjust the amount of final fees awarded in light of the results obtained through the litigation." *Duckworth*, 97 F.3d at 1399. The court may adjust the amount upward for "exceptional success," *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1308 (11th Cir. 2001), or downward "if the prevailing party was [only] partially successful in its efforts." *Resolution Trust Corp.*

---

rights." *Norman*, 836 F.2d at 1301. The relevant adjustment to the lodestar, however, relates to the degree of success in the litigation, as explained herein. *Duckworth*, 97 F.3d at 1399.

[11] This is calculated by subtracting 23.3 withdrawn hours and 12 travel hours from Mercer's initial request of 534.5 hours.

[12] This is calculated by subtracting 4.1 withdrawn hours and 12 hours billed at the paralegal rate from Mercer's initial request of 50.3 hours.

*v. Hallmark Builders, Inc*., 996 F.2d 1144, 1150 (11th Cir. 1993).  Essentially, the court must resolve two questions: "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded?  Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" *Hensley*, 461 U.S. at 434.  The simple fact that certain legal theories floundered "is not a sufficient reason for reducing a fee.  The result is what matters." *Id*. at 435.

Any way you cut it, Mercer had limited success in this litigation.  First, his retaliation claim did not survive summary judgment.  Mercer acknowledges this fact, and in his response to ALDOT's objections Mercer agreed to reduce the total claimed hours by ten percent to account for his time spent on the unsuccessful retaliation claim. Doc. 180 at 13.  ALDOT, on the other hand, suggests a fifty percent reduction in all hours expended before summary judgment.  The court finds this suggestion to be excessive.   The facts and circumstances of the surviving discrimination claim were intertwined with those associated with the retaliation claim such that the case would have necessitated many of the same tasks and time even without the failed retaliation claim.

Even at trial Mercer's success was limited.  The jury returned a mixed verdict that ultimately did not result in any tangible success for Mercer.  While the jury

found that discrimination was a motivating factor in Mercer's termination, it also concluded that Mercer would have been terminated for a non-discriminatory reason. Therefore, the jury did not award Mercer any monetary damages and he was not entitled to reinstatement.

Based on the failure as a matter of law of Mercer's retaliation claim and the practical failure to achieve relief at trial on the discrimination claim, the court recommends a downward adjustment of thirty percent to the lodestar amount. This reduction is in line with adjustments in similar cases. *See Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 717–18 (11th Cir. 2002) (affirming reduction in lodestar after plaintiff prevailed on his Title VII retaliation claim but not the related discrimination claim); *Booth v. Pasco Cty.*, 2015 WL 728178, at *1 & *8 (M.D. Fla. Feb. 19, 2015) (reducing requested fees from pretrial proceedings by 52% to account for failure to succeed on multiple discrimination claims); *Johnson v. Potter*, 2011 WL 672347, at *5 (M.D. Fla. Feb. 17, 2011) (reducing lodestar by 45% after plaintiff prevailed on her retaliation claim but not her discrimination claim). This adjustment reflects the court's best judgment as to the appropriate balancing of the degree of Mercer's success against the need to compensate his counsel for his time spent on the litigation and the public interests served by incentivizing civil rights litigation. The adjustment results in a recommended aggregate attorney's fee award of

$165,091.50.

### 4.    *Costs and Expenses*

Mercer originally requested $7,963.47 in costs and expenses. Docs. 143-1 & 148 at 12–13.  After ALDOT's objections, Mercer reduced the amount sought to $7,261.97. Doc. 180.  ALDOT continues to object to the vast majority of Mercer's claimed expenses. Doc. 187 at 30–33.

A prevailing party in a civil rights suit is in the same position as a prevailing party in any other type of action. *Allen v. Freeman*, 122 F.R.D. 589, 591 (S.D. Fla. 1988).  Generally, that party is entitled to costs under Federal Rule of Civil Procedure 54(d), but the recovery is limited to the specific costs allowed under 28 U.S.C. § 1920. *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 565 (2012). The award of costs and expenses here, however, is governed by 42 U.S.C. § 1988, which allows for an award of expenses beyond the recoverable statutory costs or the fees awarded to compensate for an attorney's time.[13] *ACLU of Ga. v. Barnes*, 168 F.3d 423, 438 (11th Cir. 1999); *Dowdell v. City of Apopka*, 698 F.2d 1181, 1192 (11th Cir. 1983); *Mallory v. Harkness*, 923 F. Supp. 1546, 1557 (S.D. Fla. 1996)

---

[13] These expenses are subsumed within the concept of a reasonable attorney's fee, *Allen*, 122 F.R.D. at 591, which effectuates the rule that an award of attorney's fees in a civil rights case should include the reasonable out-of-pocket expenditures of the attorney beyond normal overhead. *Id*.  These non-statutory costs are recoverable only if the party is entitled to fees under 42 U.S.C. § 1988.  Therefore, if the court concludes that Mercer is not entitled to an award of attorney's fees, it necessarily follows that he is not entitled to reimbursement for his costs and expenses.

("[B]ecause the Plaintiff has sought attorney's fees under 42 U.S.C. § 1988, the traditional limits of 28 U.S.C. § 1920 do not restrict the recovery of costs."). The Eleventh Circuit ordinarily takes a liberal approach when reimbursing attorney expenses under §1988. *Dowdell*, 698 F.2d at 1192; *Mallory*, 923 F. Supp. at 1557.

Applying this standard, the Eleventh Circuit and the district courts sitting within the Eleventh Circuit uniformly allow the recovery of expenses such as photocopying, postage, long distance phone calls, necessary travel, and online research. *Cullens v. Ga. Dept. of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994); *Dowdell*, 698 F.2d at 1192; *Mallory*, 923 F. Supp. at 1557; *Cherry v. Rockdale County*, 601 F. Supp. 78, 81 (N.D. Ga. 1984). The policy underlying this broad recovery of expenses is clear:

> Reasonable attorneys' fees under [§ 1988] must include reasonable expenses because attorneys' fees and expenses are inseparably intertwined as equally vital components of the costs of litigation. The factually complex and protracted nature of civil rights litigation frequently makes it necessary to make sizeable out-of-pocket expenditures which may be as essential to success as the intellectual skills of the attorneys. If these costs are not taxable, and the client, as is often the case, cannot afford to pay for them, they must be borne by counsel, reducing the fees award correspondingly.

*Dowdell*, 698 F.2d at 1190.

Mercer bears the burden of submitting a request for expenses that enables the court to determine the expenses incurred and whether Mercer is entitled to

reimbursement. *Loranger v. Stierheim*, 10 F.3d 776, 784 (11th Cir. 1994). His requested costs and expenses include: (1) the filing fee; (2) three deposition transcripts; (3) travel/mileage to and from the depositions; (4) costs for certified mail; (5) charges by ALDOT for copies of documents; (6) process service for two trial subpoenas; and (7) a mediation fee. Doc. 148 at 12–13.

ALDOT does not object to the filing fee or to the costs of the deposition transcripts,[14] Doc. 187 at 30–31, and the remaining expenses are recoverable under the liberal standard of § 1988. "[W]ith the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under section 1988." *Dowdell*, 698 F.2d at 1192 (citation omitted). Each of Mercer's expenses falls within that broad definition and none is excessive or unreasonable. Costs and expenses associated with necessary travel, certified mail and process servers, and the ALDOT's copying charges for its plant inspection documents are reasonable expenses related to this litigation. And the court is not persuaded by ALDOT's objections to the mediation fee because *Dowdell* specifically mentions settlement expenses and because a prohibition on

---

[14] ALDOT objected to the initial lack of invoices from the court reporters, but Mercer provided the invoices in his response to ALDOT's itemized objections. Doc. 194 at 20–23.

reimbursement for mediation expenses would discourage litigants from pretrial resolution of their disputes. For these reasons, the court recommends that Mercer receive reimbursement for his costs and expenses in the amount of $7,261.97.

## D.    Motion for Sanctions

The final issue before the court is the resolution of Mercer's motion for sanctions relating to ALDOT's inclusion of information derived from a sealed exhibit in its brief in response to the court's July 9, 2020 order. Docs. 187 & 190. Specifically, Mercer moves to impose sanctions on ALDOT for an alleged violation of the court's October 15, 2019 text order granting Mercer's motion to seal his counsel's time records. Doc. 190. ALDOT filed a brief in opposition to the motion (Doc. 195), and Mercer filed a reply. Doc. 196. The court recommends the denial of this motion.

On October 14, 2019, Mercer's counsel filed a motion for leave to file under seal an exhibit supporting his motion for attorney's fees and costs. Doc. 139. The motion stated that counsel intended to file "a chart reflecting his time expended and legal services provided to Plaintiff" and contended that the information was protected by the attorney-client privilege, but did not attach the chart. Doc. 139 at 1. The following day, the court granted the motion in a text order "for good cause shown" and stated that "Plaintiff is given leave to file the referenced documents

under seal." Doc. 140.

After a hearing on the underlying motion for attorney's fees, the court ordered additional briefing on two finite issues. Doc. 182.  The second of those issues pertained to the reasonableness of Mercer's counsel's hours on the case.  The court ordered ALDOT to "submit an itemized list of its objections to specific time entries, stating the basis for each." Doc. 182 at 3.  In response to that order, ALDOT submitted a chart excerpting certain of Mercer's time entries that had been filed under seal. Doc. 187 at 7–33.  ALDOT did not file the response under seal.

Mercer filed a motion to seal ALDOT's response based on the court's October 15, 2019 order sealing the original chart, along with the instant motion for sanctions. Docs. 188 & 190.  The court granted the motion to seal consistent with the district court's earlier motion. Doc. 189.  In the motion for sanctions, Mercer contends that ALDOT's response was a "violation of the Court's seal order." Doc. 188 at 1.  The court disagrees.

As explained above, the court's order granting Mercer's motion to seal did not direct the parties generally to file information regarding counsel's fees under seal—it merely permitted Mercer to file his chart under seal.  And while ALDOT's response to the court's order does include quotations from that document, ALDOT was not under any explicit order to seal its response.  In fact, ALDOT already had

cited and referenced various entries in its opposition to the motion for attorney's fees without objection. *See* Doc. 151. Moreover, even if ALDOT had been in violation of an order of the court, the disclosure was harmless because the court sealed the response on the very day Mercer filed a motion requesting that relief. Docs. 188 & 189. For these reasons, the Magistrate Judge recommends the denial of the motion for sanctions.

## III. RECOMMENDATION

For these reasons, it is the RECOMMENDATION of the Magistrate Judge that:

(1)   Plaintiff's Motion for Declaratory and Injunctive Relief, Attorney Fees and Costs (Doc. 143) be DENIED;

(2)   In the alternative, Plaintiff's Motion for Declaratory and Injunctive Relief and Attorney Fees and Costs (Doc. 143) be GRANTED IN PART and DENIED IN PART, as detailed above, resulting in an award of $165,091.50 in attorney's fees and $7,261.97 in costs and expenses; and

(3)   The motion for sanctions (Doc. 190) be DENIED.

## IV. NOTICE OF RIGHT TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b)(2), any party may file specific written objections to this report and

recommendation within fourteen (14) days.  Failure to file written objections to the proposed findings and recommendations contained in this report and recommendation within 14 days from the date it is filed shall bar an aggrieved party from attacking the factual findings or legal conclusions on appeal except for plain error. 11th Cir. Rule 3-1. Written objections shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection.  A copy of the objections must be served upon all other parties to the action.

DONE and ORDERED on August 13, 2020.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE